## 64067. FREEMAN v. THE STATE.

QUILLIAN, Chief Judge.

Defendant appeals his conviction for the sale of marijuana. *Held:*

1. The first four enumerations assert the general grounds.

The state's evidence was as follows: The defendant had a farming operation in Brooks County. His residence was north of Quitman. He employed two young men, Perkins and Barlow, to assist in the farming. Barlow was defendant's brother-in-law. They lived in a house trailer several miles from defendant's residence and were given the use of one of defendant's pickup trucks. In late 1980 a GBI agent discovered that Perkins was selling marijuana and made several purchases from him of one and two pounds in December and January, 1981, the latter sales being made at the trailer where Perkins lived. Barlow was present at one of the purchases. On January 19, the initial agent accompanied by another agent posing as his uncle visited Perkins at his trailer to arrange a purchase of a large amount of marijuana, which Perkins had said he could provide. Perkins left in defendant's pickup to get a sample. He returned in 15 to 20 minutes with a 25 pound bag of marijuana, which the agents examined. The bag was returned to Perkins and it was decided that the sale would take place on the following morning at a location selected by the agents. On January 20, the agents called Perkins and told him to come to a described location south of Quitman. An aircraft surveillance team watched as Perkins drove defendant's pickup from his trailer and drove around without arriving at the meeting place,

eventually stopping at defendant's residence for 15 to 20 minutes and then back to his house trailer. When Perkins did not show up at the meeting place, an agent called Perkins at his trailer. Perkins told them he could not find the location, and he was again given instructions on where it was. Perkins again left and arrived at the meeting place at 12:15 p.m. The two undercover agents were waiting, other agents were secreted in woods nearby and the surveillance team was in the air. The agents displayed $50,000 cash to Perkins which he examined briefly and returned to the agents. Leaving the pickup with the agents, he drove in their rental sedan north through Quitman directly to defendant's residence. Because of the trees and the fear of being detected by coming too close, the aerial surveillance team could not see exactly where on the property Perkins went or if there was anyone else there. After 15 to 20 minutes, the sedan left defendant's premises and retraced its route back through Quitman to the meeting place, arriving about 1:00 p.m. No other vehicles were seen entering or leaving defendant's premises. When Perkins got out of the sedan he had a pistol in his hand and held it on an agent while the trunk of the sedan was opened revealing eight large bags of marijuana therein. The other agent then thrust the money at Perkins who lowered the pistol and took it. He was then overpowered and arrested. The pistol belonged to defendant. Thereafter, defendant's premises were searched for additional marijuana without result and defendant was arrested. Both defendant and Perkins were released on bond. Perkins subsequently fled the state. He was eventually apprehended in Texas and returned to Georgia. Perkins pled guilty to the sale of marijuana and agreed to testify against defendant pending his sentencing.

Perkins testified that he had previously been convicted of selling marijuana and pointing a pistol at another, had served time and was on probation when he was working for defendant. He started selling marijuana for Barlow, his house trailer mate, and then was allowed to sell directly for defendant in small amounts. He believed the marijuana came from Florida. He, defendant and Barlow broke down large lots of marijuana and bagged it for sale in the barn behind defendant's house. Perkins sold marijuana in surrounding towns for $350 to $375 a pound of which he received $25 with the remainder going to defendant. When the sale of a large amount was proposed by the undercover agents defendant told him to go ahead with the sale. He and defendant were each to make $2,500 on the sale. On January 20, he saw defendant at his residence before 10:00 a.m. When he could not find the meeting place he went to defendant's residence but he was not there. He then returned to his trailer, waited for the agents to call and met with them. When he took the agents' car to defendant's residence, he and Barlow loaded the eight bags from a field ditch into

the trunk. There was more marijuana hidden in a field on the premises. Defendant was present and said he would follow in another truck with a weapon in case there was trouble but apparently did not. He delivered the marijuana, was given the money and was arrested.

Perkins and members of his family also testified that defendant attempted to get Perkins to take full responsibility for the sale of marijuana in consideration of being taken care of later.

Defendant's evidence attacked Perkins' credibility, tended to show that defendant was not present when Perkins picked up the eight bags of marijuana and presented testimony of defendant's good character. Defendant and Barlow both testified denying any involvement in the offense.

Defendant argues that the circumstantial evidence was not sufficient to establish his involvement in the offense and that the testimony of Perkins as an accomplice was not sufficiently corroborated. Since Perkins' testimony was direct evidence of defendant's involvement, the issue is not one of sufficiency of circumstantial evidence but of whether Perkins' accomplice testimony was sufficiently corroborated and, if it was, whether all of the evidence, direct and circumstantial, was enough to authorize the jury to find defendant guilty beyond a reasonable doubt.

" 'The sufficiency of the corroboration evidence is peculiarly a matter for the jury to determine. If the verdict is founded on slight evidence of corroboration connecting a defendant with the crime, the verdict is legally sufficient. [Cit.]' . . . '[t]he necessary corroboration may consist entirely of circumstantial evidence, and evidence of the defendant's conduct before and after the crime was committed may give rise to an inference that he participated in the crime. [Cit.]' " *Berry v. State,* 248 Ga. 430, 432 (283 SE2d 888).

We find the other evidence sufficient to corroborate Perkins' testimony of defendant's involvement in the offense. Considering all of the evidence, we find it sufficient to authorize a rational trier of fact to find defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

2. There is no merit in the remaining enumeration that there was a fatal variance between the allegation of a sale of marijuana and the evidence thereof because the evidence did not show that a sale took place.

" 'Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the *seller* completes his performance with reference to the physical delivery of the goods . . .' Code Ann. § 109A-2—401(2). (Emphasis supplied.); [Cit]. Thus a sale, as defined in Code Ann. § 109A-2—106, was completed when (the defendant) caused the marijuana to be delivered to (the undercover agent)."

*Johnson v. State,* 154 Ga. App. 353 (1), 354 (268 SE2d 406).
*Judgment affirmed. Shulman, P. J., and Carley, J., concur.*

DECIDED JUNE 22, 1982 —
REHEARING DENIED JULY 14, 1982 —

*A. J. Whitehurst, Emory Walters,* for appellant.
*H. Lamar Cole, District Attorney, James E. Hardy, Assistant District Attorney,* for appellee.