69474. MEYERS v. THE STATE.
(329 SE2d 293)

McMURRAY, Presiding Judge.

On December 29, 1983, undercover agents of the Macon-Bibb County Intelligence, Narcotics and Vice Unit, posing as prospective purchasers of marijuana, met with defendant Carl Meyers, and two other individuals, Donald E. Powell and Donald E. Selph, in Telfair County, Georgia. The marijuana which the agents were interested in purchasing had been grown by Selph. Powell and the defendant assumed the roles of "brokers." The parties struck a deal for the purchase by the agents of between 500 and 700 pounds of marijuana. Because the conspirators were reluctant to leave Telfair County, and because the undercover agents were instructed not to do anything in

Telfair County, it became necessary for the parties to work out a compromise concerning the mechanics of the sale. It was decided that one of the conspirators would go to Macon to count the agents' money; that after the money was counted, the conspirator would return to Telfair County with the agents and the money; and that the agents would then meet up with the remaining conspirators and the marijuana. In the words of Bibb County Deputy Sheriff Terry Singleton, the head of the undercover investigation, the final agreement was as follows: "They [the conspirators] said they would come to Macon, they would count the money, we would go with them to pick up the marijuana, when we got there that they would count the money, if the money was there they would provide us with scales and we could weigh the marijuana and they would load it onto the truck and they would drive it to Macon for us."

On January 3, 1984, pursuant to the agreement, Donald Powell drove to Macon to count the agents' money. The money (which had been borrowed from public funds) was in a safety deposit box in a Macon bank. The agents showed Powell $455,000 in cash. After the money was counted, the agents placed it in two briefcases. In one of the briefcases, the agents placed $55,000 and in the other briefcase, the agents placed the remaining $400,000. The agents retained possession of the briefcases and Powell was given the impression that the entire sum of $455,000 was being carried with them to the site of the marijuana purchase when in fact only $55,000 of the money was carried with them.

After they counted the money, Powell and the agents proceeded to Telfair County. One of the agents accompanied Powell in Powell's automobile and two other agents traveled in another car. The entourage made two stops as it made its way toward Telfair County. They stopped in Bleckley County, Georgia where Powell telephoned the defendant to let him know that the money had been counted and the sale was still on. They also stopped in Dodge County, Georgia, where the agents picked up a rental truck. Ostensibly, the truck was to be used to haul the marijuana when actually, the truck was a Trojan horse as it had been filled with members of the Bibb County "SWAT" Team.

Once inside Telfair County, the agents met the defendant on a county road. The defendant told the agents that he and the others (conspirators) were "concerned about doing the deal for the whole 700 pounds at one time." Accordingly, the defendant suggested the sale be made in 100 pound transactions. This suggestion was rejected by the agents, so the conspirators agreed to sell all of the marijuana to the agents.

At that point the defendant left the agents. He informed them that he had to move the marijuana from its hiding place to the pick-

up site. Three hours later the defendant returned and the agents and Powell followed the defendant down a farm road. Ultimately, they came upon the marijuana in an open field. The agents brought the truck into the field. The defendant was under the impression that the money was in the back of the truck. He walked toward the back of the truck as if to open it. The agents momentarily diverted the conspirators' attention. When the agents were sure everyone was properly positioned, they opened the back of the truck and the "SWAT" team burst forth. The defendant and Powell were arrested and the marijuana was seized. Selph and another conspirator (Powell's wife) were arrested later.

The conspirators were indicted by the Bibb County Grand Jury. It was alleged that they had conspired to commit the offense of trafficking in marijuana by conspiring to *sell* more than 100 pounds but less than 2,000 pounds of marijuana. Selph, Powell, and Powell's wife pleaded guilty to the charges levelled against them. The defendant Meyers entered a plea of not guilty. He was tried by the court without a jury. The court found the defendant guilty and sentenced him to 15 years, five to serve and ten on probation. This appeal followed.

In his sole enumeration of error, defendant Meyers contends the trial court erred in failing to rule that the conspiracy alleged in the indictment merged with the completed substantive offense of trafficking in marijuana and that, therefore, jurisdiction did not lie in Bibb County. Defendant does not challenge the evidence concerning the existence of the conspiracy, nor does he assert that a conspiracy charge cannot be prosecuted in Bibb County. He simply argues that the substantive offense was completed; that the substantive offense took place in Telfair County; and that, since the conspiracy charge was merged into the substantive offense, he cannot be prosecuted for the conspiracy charge in Bibb County. *Held*:

"At common law, and now in the majority of states and the Federal courts, conspiracy to commit a crime is an offense separate and distinct from the crime or crimes which are the object of the conspiracy. 16 AmJur2d 220, Conspiracy, § 5; 22 CJS 755, Criminal Law, § 288. However in Georgia conspiracy is a statutory crime (Code Ann. § 26-3201 (CCG § 26-3201; Ga. L. 1968, pp. 1249, 1335; as amended through 1977, p. 601)) [now OCGA § 16-4-8; see also OCGA § 16-13-33 upon which this prosecution was based], and the Supreme Court has held that conspiracy 'clearly is merged into the greater crime where the evidence shows without dispute that the crime charged was actually committed . . .' *Crosby v. State*, 232 Ga. 599, 602 (207 SE2d 515)." *Evans v. State*, 161 Ga. App. 468, 470 (288 SE2d 726). Was the greater crime actually committed in the case sub judice?

Defendant Meyers argues that the offense of conspiracy to traffic in marijuana (see OCGA § 16-13-33) merges with the substantive of-

fense of trafficking in marijuana (OCGA § 16-13-31 (c)) when any member of the conspiracy does any act prohibited by the trafficking statute. OCGA § 16-13-31 (c) provides that a person commits the offense of trafficking in marijuana when he "knowingly sells, manufactures, grows, delivers, brings into this state, or has actual possession of a quantity of marijuana exceeding 100 pounds . . ." Thus, defendant takes the position that the substantive crime of trafficking in marijuana was complete when the conspirators first possessed the marijuana in Telfair County.

We would be favorably disposed to consider defendant's position had he been accused of conspiring to commit the offense of trafficking in marijuana by conspiring to *possess* more than 100 pounds but less than 2,000 pounds of marijuana. The defendant, however, was not so charged. The indictment accused the defendant of conspiring to commit the offense of trafficking in marijuana by conspiring to *sell* more than 100 pounds but less than 2,000 pounds of marijuana. Since the ultimate purpose of the conspiracy was to sell, not to possess, marijuana, and since the possession and sale of a controlled substance are separate and distinct crimes, we cannot say the offense of conspiracy to commit the offense of trafficking in marijuana by conspiring to sell more than 100 pounds but less than 2,000 pounds of marijuana was committed when the conspirators first possessed the marijuana in Telfair County. See generally *Harmon v. State*, 235 Ga. 329, 330 (2) (219 SE2d 441).

Relying upon *Johnson v. State*, 154 Ga. App. 353 (1) (268 SE2d 406), and its progeny, defendant contends the conspirators actually sold the marijuana in Telfair County even though no money changed hands and the agents did not exercise dominion over the marijuana until after the conspirators were arrested. In that case, the court quoted from the language of Code Ann. § 109A-2—401 (2) (now OCGA § 11-2-401 (2)), providing: "Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods . . ." In so doing, the court held that a sale "was completed when Johnson [the seller] caused the marijuana to be delivered to Arthur [the buyer]." *Johnson v. State*, 154 Ga. App. 353, 354, supra. Accord *Robinson v. State*, 164 Ga. App. 652, 653 (1) (297 SE2d 751); *Freeman v. State*, 163 Ga. App. 71, 73 (2) (292 SE2d 563).

Defendant's reliance upon *Johnson* is misplaced. The final agreement of the parties called for the conspirators to count the money in Bibb County; recount the money in Telfair County; provide the buyers with scales for the weighing of the marijuana; load the marijuana on the buyer's truck; and deliver the marijuana in Macon. Thus, it cannot be said that the conspirators completed their performance with respect to the delivery of the marijuana prior to their arrest.

Since the substantive offense was not completed, the conspiracy charge was not extinguished. It follows that defendant properly was prosecuted in Bibb County for conspiracy to commit the offense of trafficking in marijuana by conspiring to sell more than 100 pounds but less than 2,000 pounds of marijuana.

*Judgment affirmed. Deen, P. J., and Sognier, J., concur.*

DECIDED MARCH 12, 1985 —
REHEARING DENIED MARCH 26, 1985 — 

*Charles T. Erion,* for appellant.

*Willis B. Sparks III, District Attorney, Thomas J. Matthews, Assistant District Attorney, James L. Wiggins, Special Assistant District Attorney,* for appellee.