A98A1423. GIBSON v. THE STATE.
(505 SE2d 63)

BLACKBURN, Judge.

James Oliver Gibson appeals from his convictions on 31 separate offenses, including multiple counts of kidnapping and false imprisonment, aggravated assault on a peace officer, armed robbery, escape, burglary, theft by taking a motor vehicle, and use of a firearm by a convicted felon.

Several of the charges against Gibson related to a series of offenses occurring on August 27, 1995, when Gibson was stopped for driving under the influence. When the state patrolman approached the window of Gibson's car, Gibson pulled a pistol and shot the officer in the hand. After the officer and another policeman returned fire, Gibson fled the scene. As an intense manhunt was conducted, Gibson broke into a house and held an elderly couple, Maysie and Adam Lee, and their daughter-in-law, Sheron Lee, hostage, holding what appeared to be a gun wrapped in a towel. He asked Maysie Lee to drive him away from the scene. However, after a standoff with police at the house, during which he repeatedly threatened to kill his hostages, Gibson ultimately surrendered.

Other charges against Gibson related to events occurring in December 1996. On Christmas Eve, Gibson escaped from the Brantley County Jail, where he was being held awaiting trial on charges relating to the August 1995 incident as well as arson charges relating to a separate incident. At about 8:45 a.m. on Christmas morning, Gibson broke into Wallace Smith's house in Nahunta, Georgia, and stole a pistol that Smith's girl friend kept in the house. When Smith, who had been visiting his sister at her house nearby, returned home, Gibson pulled the pistol on him and forced him to come inside the house. Gibson demanded that Smith drive him to Blackshear in his truck. However, Smith managed to escape and ran to his sister's

house. They called 911 and went back outside, and noticed that Gibson and the truck were gone.

A few hours later, Gibson broke into Larry and Deidre Thomas' house in Hickox, Georgia, and held them and their three small children hostage. Larry Thomas agreed to drive Gibson to Blackshear, and the two left in Thomas' truck, with Thomas driving and Gibson crouched in the passenger side. When Thomas came to an intersection, he opened the door and ran from the truck. Gibson drove away in the truck, but crashed it into a railroad crossing and fled into the woods. He was captured a short while later near a railroad ditch with the pistol in his hand.

Gibson was convicted on 31 charges relating to the August 1995 and December 1996 incidents. Because of prior convictions for violent crimes, Gibson was sentenced on a number of the charges to life in prison without the possibility of parole pursuant to the recidivist statute, OCGA § 17-10-7.[1]

1. Gibson contends that the trial court erred in refusing to sever the trials of the charges relating to the August 1995 incident and the charges relating to the December 1996 incident. This contention is without merit.

"When separate offenses have been joined because they are of the same or similar character where the similarity reaches the level of a pattern evincing a common motive, plan, scheme or bent of mind, or where the modus operandi of the perpetrator is so strikingly alike, that the totality of the facts unerringly demonstrate and designate the defendant as the common perpetrator, the offenses may be joined — subject to the right of the defendant to a severance in the interests of justice. Severance in these circumstances lies within the discretion of the trial court." (Citations and punctuation omitted.) *Seidel v. State*, 197 Ga. App. 14, 16 (3) (397 SE2d 480) (1990).

It is clear that, had the offenses been severed, evidence regarding the August 1995 incidents would have been admissible as similar transaction evidence in the trial of the December 1996 incidents, and vice versa. Both occurrences involved situations in which Gibson, while attempting to escape from law enforcement authorities, broke into homes and held the occupants hostage. In both situations Gibson sought to have the hostages drive him away from the scene. "[W]here the evidence of one crime would be admissible in the trial of the other crime, it cannot be said that the trial court abused its discretion in denying the motion for severance. . . . *Weaver v. State*, 206 Ga. App. 560, 561 (426 SE2d 41) (1992)." (Punctuation omitted.) *Redding v.*

---

[1] Somewhat ironically, Gibson was acquitted of the DUI charge for which he was originally stopped.

*State*, 219 Ga. App. 182, 184 (3) (464 SE2d 824) (1995). Accordingly, this enumeration is without merit.

2. Gibson contends that the trial court erred in sentencing him to life without parole under the recidivist statute, OCGA § 17-10-7 (b) (2), arguing that such statute constitutes an unconstitutional ex post facto law and imposes cruel and unusual punishment. These issues have been decided adversely to Gibson. *Ortiz v. State*, 266 Ga. 752, 753-754 (2) (470 SE2d 874) (1996); *Lloyd v. State*, 226 Ga. App. 401, 403 (4), (5) (487 SE2d 44) (1997).

3. Gibson contends that the trial court erred in refusing to grant a mistrial after his character was improperly placed into evidence. This contention is without merit.

Upon direct examination by the State, GBI Agent Tommy Stalvey testified as follows about an interview he had with Gibson after the August 1995 incident: "Q. Agent Stalvey, at any time did you ask Mr. Gibson why he had shot the trooper? A. Yes, I did. Q. What did he tell you? A. The reason he shot the trooper was because he didn't want to go back to jail. He didn't have a driver's license, no insurance, and quote, 'no deed on the car,' end quote." Gibson's attorney moved for a mistrial, claiming that the testimony about going back to jail improperly placed Gibson's character into evidence. The trial court denied the motion for mistrial, but gave curative instructions to the jury advising them to disregard any testimony about Gibson's statement relative to going back to jail. Gibson's attorney approved the wording of the curative instructions, but contended that it was insufficient to cure the harm.

As an initial matter, it does not appear that the officer's testimony regarding Gibson's statement was improper, as the statement served to explain Gibson's motive for shooting the officer. See *Johnson v. State*, 260 Ga. 457, 458 (2) (396 SE2d 888) (1990) (evidence of motive admissible even if it incidentally puts defendant's character into evidence).

However, even if the testimony were improper, the trial court did not err in denying the motion for mistrial and giving curative instructions. "Whether to grant a mistrial based on improper character evidence is within the discretion of the trial judge. In reviewing the trial court's decision, an appellate court may consider the nature of the statement, the other evidence in the case, and the court's and counsel's action in dealing with the impropriety." (Footnote omitted.) *Sims v. State*, 268 Ga. 381, 382 (2) (489 SE2d 809) (1997). See also *Usher v. State*, 259 Ga. 835, 836-837 (2) (388 SE2d 686) (1990) (whether curative instruction will suffice in lieu of grant of mistrial lies in discretion of trial court). In light of the overwhelming nature and sheer volume of the evidence against Gibson, it is extremely doubtful that a single reference to Gibson's desire to avoid going back

to jail would have materially influenced the jury's decision whether to acquit or convict. Accordingly, we cannot say that the trial judge's decision to deny a mistrial and instead issue curative instructions was an abuse of discretion. See *Roberts v. State*, 267 Ga. 669, 674 (8) (482 SE2d 245) (1997); *Usher*, supra; *Sims*, supra.

4. In his fourth enumeration of error, Gibson asserts that "[t]he trial court erred in failing to grant a directed verdict of acquittal as to certain offenses at the close of the State's case." In his brief, he designates these "certain offenses" as the following: Count 8 (kidnapping of Adam Lee); Count 21 (kidnapping of Larry Thomas); Count 27 (kidnapping of Deidre Thomas); Count 31 (armed robbery of Larry and Deidre Thomas); and Count 32 (theft by taking motor vehicle).

"When an appellant argues more than one error within a single enumeration, this court in its discretion may elect to review none of the errors so enumerated in violation of OCGA § 5-6-40 or elect to review any one or more of the several assertions of error contained within the single enumeration and treat the remaining assertions of error therein as abandoned." (Punctuation omitted.) *Griffin v. State*, 228 Ga. App. 200, 201 (491 SE2d 437) (1997). In addition to combining several asserted errors together into one enumeration, Gibson cites no case law in support of this enumeration, and only the briefest of arguments. Nevertheless, in the exercise of our discretion, we shall address each of the asserted errors.

(a) With respect to Count 8, kidnapping of Adam Lee, Gibson contends that there was no evidence of asportation sufficient to support such charge. " 'A person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will.' OCGA § 16-5-40 (a). For a kidnapping conviction, the State must prove an unlawful asportation of a person against his will. The determinative factor with regard to the element of asportation is whether appellant even momentarily caused the victims, without lawful authority or warrant, through intimidation and coercion, to engage in actions (including moving from one place to another) against their wills." (Citations and punctuation omitted.) *Briard v. State*, 188 Ga. App. 490, 491 (1) (373 SE2d 239) (1988). "[O]nly the slightest movement of the victim is required to constitute the necessary element of asportation." *Helton v. State*, 166 Ga. App. 662, 663 (1) (305 SE2d 592) (1983).

The evidence showed that Adam Lee, who was in ill health and could walk only with difficulty, was sitting in the kitchen when Gibson came into the house. Other than to go to the bathroom, Lee remained sitting in the kitchen during the entire incident, up until the point he was allowed to leave the house. The State contends that the asportation element was met when Lee was released by Gibson. It points to evidence that Lee did not want to leave his family in the

house with Gibson. When police officers came to the door to get Lee, Lee said he did not want to leave, and one of the officers grabbed Lee's arm and led him out the door. The State contends that this evidence that Lee was moved against his will constitutes sufficient evidence of asportation to support a kidnapping charge.

The State does not cite, and we have not located, any cases which hold that the asportation element can be satisfied solely by evidence of the victim's movements in being released by his captor. Implicit in the concept of asportation is that the victim is being "carried away" by the defendant. See OCGA § 16-5-40 (a) (kidnapping occurs when defendant "abducts or steals away" victim); Black's Law Dictionary, 6th ed., p. 114 (1990) (defining asportation as "the carrying away of the victim"). Although releasing an individual from confinement necessitates movement of that individual, it is not the type of movement which constitutes asportation so as to support a kidnapping conviction. The movement of Adam Lee relied upon by the State was movement *away* from the control of the defendant, and thus cannot constitute "abducting" or "stealing away" of the victim. As the State points to no other evidence of asportation, the trial court erred in denying Gibson's motion for directed verdict on this count.[2]

(b) With respect to Count 21, kidnapping of Larry Thomas, Gibson again contends that there was no evidence of asportation. This contention is without merit. Although Gibson contends that Larry Thomas voluntarily drove Gibson away in his truck, Thomas' actions were clearly coerced by the fact that Gibson had a gun and threatened his family. Moreover, throughout the time Thomas was driving Gibson in the truck, Thomas was clearly not free to leave the truck, and was aware at all times that Gibson had a gun. To say that Thomas' actions in accompanying Gibson were purely "voluntary," so as to relieve Gibson from criminal liability therefor, is to deny reality.

(c) Gibson also contends that there was no evidence of asportation with respect to Count 27, kidnapping of Deidre Thomas. Although Gibson was clearly guilty of falsely imprisoning Deidre Thomas (and was convicted of such), the State has failed to show any movements by Thomas that would constitute asportation so as to support a kidnapping conviction. The fact that Thomas, on her own initiative, moved around the house to make tea for Gibson and help him use the telephone does not constitute asportation. See *Briard*, supra. Accordingly, Gibson's conviction for kidnapping Deidre Thomas must be reversed.

(d) In Count 31, Gibson was charged with armed robbery in con-

---

[2] We note that Gibson was convicted of false imprisonment with respect to Adam Lee, and does not challenge that conviction on appeal.

nection with taking from the Thomases $10 in cash and their truck. In Count 37, Gibson was charged with theft by taking a motor vehicle in connection with the truck. Gibson contends that the Thomases voluntarily gave him the cash and the truck. This contention is without merit. With respect to the cash, Deidre Thomas testified that, as her husband was preparing to leave with Gibson, Gibson held out his empty wallet to her. Deidre Thomas testified that Gibson "stood there and waited for me to give [money to] him." Larry Thomas told Deidre to give Gibson some money, and she then gave him $10 in cash from her billfold. Although Gibson claims that this transaction was purely voluntary, the holding out of the empty wallet by the armed intruder could clearly be interpreted as a demand for money. To claim that Thomas' compliance with this implied demand was "voluntary" is to rob the term of any meaning.

Gibson's arguments with respect to the taking of the truck have even less merit. After Larry Thomas escaped from the truck, Gibson proceeded to get into the driver seat and drive the truck away. This constituted theft, and any contention that Thomas consented to such theft is absurd.

5. In his final enumeration, Gibson contends that his various false imprisonment convictions merged into the corresponding kidnapping convictions. The State concedes that, to the extent the kidnapping convictions are affirmed, the false imprisonment convictions would merge therein. Accordingly, we hold that the false imprisonment convictions on Counts 11 (Maysie Lee), 13 (Sheron Lee), 18 (Wallace Smith), 22 (Larry Thomas), and 24 (Robby Thomas), respectively, merged into the kidnapping convictions on Counts 10 (Maysie Lee), 12 (Sheron Lee), 17 (Wallace Smith), 21 (Larry Thomas), and 23 (Robby Thomas).[3]

*Judgment affirmed in part and reversed in part. McMurray, P. J., and Eldridge, J., concur.*

DECIDED JULY 30, 1998 —
RECONSIDERATION DENIED AUGUST 12, 1998.

*John M. Hatfield*, for appellant.
*Richard E. Currie, District Attorney, George E. Barnhill, Assistant District Attorney*, for appellee.

---

[3] We note that our ruling has no practical effect on Gibson's sentence, as he was validly sentenced to life without the possibility of parole on each of the five kidnapping counts as well as the armed robbery count.