A98A2315. WILLIAMS v. THE STATE.
(511 SE2d 910)

McMURRAY, Presiding Judge.

Defendant-appellant Efrem Williams and co-defendant Alfred Demond Lawson were each charged with ten counts of armed robbery, five counts of kidnapping, two counts of theft by receiving, and seven counts of possession of a firearm during the commission of a crime. They were jointly tried before a jury, which found defendant "Williams guilty of all charges against him [and finding co-defendant Lawson] not guilty on any charges listed." On appeal, defendant chal-

lenges his convictions for Counts 9 through 13, namely, the kidnapping, armed robbery, and firearm charges involving the victims Chad T. Curry and David M. Droll. Viewed in the light most favorable to the jury's verdicts as to those charges, the evidence revealed the following:

Co-indictee Jerry Lewis Lee identified defendant Williams as one of the gang that committed the crimes. Defendant "has a [distinctive] gold tooth or a gold cap or edge around his [front upper] tooth. The gold stands out." On December 24, 1990, Chad Thomas Curry was walking with David M. Droll behind the Food Lion on Gordon Highway when they were "stopped by three guys in a silver Acura and one of them, the one in the back seat, on the driver's side, pulled out and put a gun on [them]." The gunman said, " 'Get in the car.' Then he pointed the gun at [Chad Curry and David Droll] and [they] got in the car. . . . Then they started driving around front and they . . . got [a] chain off [David Droll] and [his] three rings and then they told [Chad Curry and David Droll] to give them [(the robbers) their] wallets. And then [the robbers] checked to see if [Chad Curry and David Droll] had watches on and they took . . . two cassette tapes and [Chad Curry's] hat. Then told [Chad Curry and David Droll] to get out the car. . . ." David Droll specified that the robbers took "[a] gold chain with a pendant on it, a gold ring and two silver rings, and [his] wallet. . . . [All David Droll recovered was one] ring, . . . the gold and black onyx ring." Neither Chad Curry nor David Droll could positively identify defendant Williams in court, but Chad Curry confirmed he picked defendant as the driver out of a photographic lineup examined at the police station in late December.

Annette Freeman identified her car as a red Toyota Corolla, with a South Carolina tag, AZL 106. Tony Freeman testified that on December 24, 1990, he was robbed of his wallet at gunpoint, after which the thieves jumped in his sister's car "and they said, 'I told you to keep going,' . . . and they drove off." On December 30, 1990, near the Kroger on Deans Bridge Road by Augusta Tech Drive, James Thomas Lifsey was kidnapped at gunpoint by four young men in a small red foreign car, with a non-Georgia partial tag number, —106. The gunman "stuck the gun back in [Lifsey's] face and knocked [his] glasses off." Lifsey's brother thought he had spotted the car, and together, they viewed a small red car, tag number AZL 106, which they reported to police.

Adrian Norman identified defendant in court as the driver of a dark grey Mercury Topaz. This person "was kind of like . . . kind of dark with a low hair cut and he had a gold tooth on the left side. . . ." Defendant stopped the car near Adrian Norman and "asked [Adrian Norman] what time it was. . . ." The passenger "pulled out a gun and said, 'Give me your jacket.' " Adrian Norman

complied, yielding his New York Mets jacket to a third "guy in the back seat. He rolled down the window and I [Adrian Norman] gave him the jacket."

Investigator Wayne Pinkston with the Richmond County Sheriff's Office investigated the theft of a smoke gray, four-door, 1987 Mercury Topaz bearing a white Acura-of-Augusta tag, identified by Chad Curry and David Droll as the vehicle involved in their armed robbery and kidnapping. This vehicle was recovered but only as a total wreck. Adrian Norman's Mets jacket was retrieved from the car and returned to him. Investigator Pinkston next responded to the reported theft of a red Toyota Corolla bearing a South Carolina tag AZL 106. The car was found in the Kroger parking lot on Deans Bridge Road, and defendant Williams was arrested at the scene. Concealed in his shoe, defendant "had two yellow gold nugget rings, one yellow gold initial ring with the letter 'D' as in David on it, one herringbone necklace and one yellow rope chain and one wrist watch."

In a custodial statement, defendant Williams explained to Investigator Pinkston that he had gotten use of the red car from Pete, last name unknown, in exchange for $10 in gas money. Defendant admitted driving three friends around and that one of them had a small chrome .25 caliber handgun. At the direction of the others, defendant pulled the car over and a co-indictee "pulled out a gun and told [some male] to get in." Defendant Williams also took the stand and admitted driving the red Toyota even though he knew it was stolen. He testified that the gunman acted without discussing any plan amongst the four. He admitted that, when arrested, he possessed items identified by the victims as stolen property, but claimed he got them from a person named Rico Fryer.

Defendant's motion for new trial was denied, and this appeal followed. *Held*:

1. Defendant first enumerates the general grounds as to Counts 9, 10, 11, 12, and 13.

(a) " 'On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant (defendant here) no longer enjoys a presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). Conflicts in the testimony of the witnesses, including the State's witnesses, [are] a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.' (Citations and punctuation omitted.) *Turner v. State*, 223 Ga. App. 448, 449 (1) (a) (477 SE2d 847)." *Howard v. State*, 227 Ga. App. 5, 8 (6) (a) (488 SE2d 489).

(b) "The testimony of a single witness is generally sufficient to establish a fact. . . ." OCGA § 24-4-8. If corroboration were necessary in the case sub judice, the testimony of the eyewitness co-indictee Jerry Lewis Lee, identifying defendant, corroborated Chad Curry's out-of-court identification of defendant in the photographic lineup. See *Farley v. State*, 210 Ga. App. 580 (436 SE2d 770). Proof of defendant's complicity in the crimes rather than his mere presence comes from proof that the spoils of armed robbery were hidden in defendant's shoes, authorizing the jury's verdict that defendant is guilty, beyond a reasonable doubt, as a party to the armed robberies alleged in Counts 10 and 12. *Butler v. State*, 194 Ga. App. 208 (2), 209 (390 SE2d 278).

(c) Under Georgia law, " '(a) person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will.' OCGA § 16-5-40 (a). Further, the slightest movement of the victim will establish asportation. *Lloyd v. State*, 226 Ga. App. 401, 402 (1) (487 SE2d 44) (1997); *Lockett v. State*, 217 Ga. App. 328, 329 (1) (457 SE2d 579) (1995)." *Cosby v. State*, 234 Ga. App. 723, 724 (2) (507 SE2d 551). In the case sub judice, proof that defendant willingly drove the victims around the corner of the parking lot while they were being robbed at gunpoint is sufficient to authorize his conviction as a party to the crimes of kidnapping Chad Curry and David Droll as alleged in Counts 9 and 11. *Brown v. State*, 225 Ga. App. 201, 202 (1) (483 SE2d 641).

(d) The evidence was also sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307, supra, to authorize defendant's conviction as a party to the crime of possessing a firearm during the commission of a crime, as alleged in Count 13. *Collins v. State*, 229 Ga. App. 210, 211 (1) (b) (493 SE2d 592). The enumeration of the general grounds is without merit.

2. Next, defendant contends the trial court erroneously denied defendant his right to conclude the closing argument. We disagree.

Counsel for the co-defendant tendered the entire written pretrial statement of a co-indictee who testified for the State in order to impeach that witness. This was admitted over defendant's contemporaneous objection that "[w]e have the live testimony of this witness. There could be parts of that statement that are conflicting. The jury will be confused." Defendant subsequently moved to exclude the co-indictee's statement on the ground that it was improperly introduced during the co-defendant's cross-examination of the co-indictee. Counsel for the co-defendant confirmed "he wanted this [statement] introduced into evidence and [that] he introduced it . . . of his own free will and accord. . . ." Defendant then first objected to the order of argument, when the State's attorney declined to waive her right to

conclude closing argument. Defendant repeated his objection: "I just think you have to introduce evidence at the proper time, that's my only contention. . . ."

"After the evidence is closed on both sides, the prosecuting attorney shall open and conclude the argument to the jury. If the defendant introduces no evidence, his counsel shall open and conclude the argument to the jury after the evidence on the part of the state is closed." OCGA § 17-8-71. "This right is not forfeited when the defendant testifies in his own behalf, provided he introduces no other evidence. Code Ann. § 38-415 [now OCGA § 24-9-20 (c)]. [But] the right of a defendant introducing no evidence at trial to open and close . . . is not absolute. If one defendant offers evidence in the trial of co-defendants, the right to make the closing argument is lost to all defendants, even those introducing no evidence, for the reason stated in *Lackey v. State*, 246 Ga. 331 (10) (271 SE2d 478) (1980). Further, the right is waived by failure to make a timely objection at trial. *Scott v. State*, 243 Ga. 233, 234 (253 SE2d 698) (1979); *Garrett v. State*, 21 Ga. App. 801 (7) (95 SE 301) (1918)." *McDuffie v. Jones*, 248 Ga. 544, 546 (2) (283 SE2d 601).

"Whether the witness admits or denies making the prior inconsistent statement in writing, the written statement [now is] admissible 'because the jury may now consider the inconsistent statement as substantive evidence.' . . . This change in the admissibility of prior inconsistent statements does not mean that the cross-examiner must now offer the prior [inconsistent] statement into evidence before impeaching the witness. [The] purpose behind laying a foundation for impeachment is met by showing or reading the prior written statement to the witness before asking questions about it. . . ." (Footnotes omitted.) *Duckworth v. State*, 268 Ga. 566, 567 (1), 568 (492 SE2d 201). In our view, when the co-defendant in the case sub judice attempted impeachment of the co-indictee during cross-examination by tendering into evidence the *entire written statement* of that witness, this amounted to the introduction of substantive evidence by the co-defendant for purposes of OCGA § 17-8-71. *Kennebrew v. State*, 267 Ga. 400, 403 (4) (480 SE2d 1). It follows that all defendants thereby lost the right to conclude closing argument, or, perhaps more accurately, the State thereby retained the right to conclude. The fact that the Supreme Court of Georgia in *Duckworth v. State*, 268 Ga. 566, supra, ruled that OCGA § 24-9-83 does not mandate that a prior inconsistent statement be admitted into evidence *before it is used for impeachment* certainly does not render erroneous the trial court's admission of such a statement after cross-examination. Such a statement is substantive evidence under *Gibbons v. State*, 248 Ga. 858, 862 (286 SE2d 717), the value of which is not limited to impeachment.

3. The third enumeration contends the trial court erred in failing to give a complete charge on the law of circumstantial evidence, OCGA § 24-4-6. See *Mims v. State*, 264 Ga. 271 (443 SE2d 845).

The record contains written requests to charge submitted by counsel for the co-defendant, including a charge on circumstantial evidence. But for aught that appears of record, no written requests were submitted by defendant himself. Nor are we shown where defendant purported to join in the requests submitted by the co-defendant. In the case sub judice, the State's case consists of both direct and circumstantial evidence. Consequently, the failure of the trial court to give, on this defendant's behalf, an unrequested charge on the law of circumstantial evidence as set forth in OCGA § 24-4-6 is not error. *Yarn v. State*, 265 Ga. 787, 788 (2) (462 SE2d 359).

*Judgment affirmed. Blackburn and Eldridge, JJ., concur.*

DECIDED FEBRUARY 9, 1999.

*Peter D. Johnson*, for appellant.
*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.