## A99A1964. NELSON v. THE STATE.
### (528 SE2d 844)

SMITH, Judge.

Robert Edward Nelson was convicted of two counts of armed robbery and two counts of possession of a firearm during the commission of a felony. Following the denial of his motion for new trial, Nelson filed this appeal, enumerating 11 errors, most of which concern the trial court's evidentiary rulings. Having determined that no reversible error occurred, we affirm.

The underlying case arose after two "very loud, very boisterous" masked men entered Candler Federal Credit Union.[1] After forcing all the customers to lie on the floor, they robbed the bank at gunpoint. They were agitated and insistent, and one emphatically brandished a pistol. One robber, later identified as Nelson, confronted the lead teller, placed a mesh bag in front of her, then demanded money. Due to that teller's extremely close contact with Nelson, she was able to discern his facial features through the stocking mask and later identified him. The second man pointed a gun directly at the teller's face and ordered her to "[b]ack up, b---h." After the lead teller complied, this same assailant demanded money from another teller.

Unlike these two witnesses, a third bank employee observed the perpetrators before they donned their masks. This eyewitness saw

---

[1] Nelson's co-defendant, Roosevelt Byrd, Jr., was acquitted of the credit union heist but was convicted of other armed robberies. *Byrd v. State*, 236 Ga. App. 485, 486 (3) (512 SE2d 372) (1999).

the two robbers on three separate occasions: when she walked outside to her car just before the robbery, then again after she reentered the credit union, and, finally, on the screen of a monitor as security cameras captured the armed robbery in progress. After selecting Nelson's photograph from a photo array, she felt "very sure" about her choice. Similarly, at trial, she was "definite" that Nelson was one of the two men who had walked past her in the parking lot just moments before the robbery.

Meanwhile, an employee of a nearby business became suspicious that a robbery was underway after noticing a driver remain inside a vehicle with the engine running while two other men "started walking real fast" toward the credit union. This alert bystander jotted down a description of the getaway vehicle and its tag number just as the men raced out of the bank and "jumped in the car and sped off." A cap initialed inside with "QED" was discovered at the crime scene near a trail of scattered, dye-colored money. Nelson's stepdaughter, whose initials are Q. E. D., identified this cap as her "skully."

1. Nelson contends the trial court erred in denying his motion for a directed verdict. We disagree. The State offered both direct and circumstantial evidence to prove Nelson's guilt. Two witnesses positively identified Nelson as one of the robbers, the getaway car belonged to a friend's wife, similar transaction evidence indicated that Nelson had committed another robbery in a similar manner, and Nelson's futile attempt to hide from investigators inside a closet pointed to his guilt. Although Nelson focuses on inconsistencies in the witnesses' identification, the jury apparently resolved any conflicts adversely to him. *Byrd v. State*, 236 Ga. App. 485, 486 (1) (512 SE2d 372) (1999). Construed in a light most favorable to the verdict, the evidence was sufficient to authorize a jury to find Nelson guilty of armed robbery beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Byrd*, supra at 486 (1); *McGuire v. State*, 204 Ga. App. 151, 152 (418 SE2d 464) (1992).

2. Nelson's claim that the two counts of armed robbery should have been merged is without merit. Nelson's robberies of the two individual bank tellers at the same site constituted two separate crimes and did not merge in fact or law. *Byrd*, supra at 489 (9); *State v. Smith*, 193 Ga. App. 831, 832 (1) (389 SE2d 547) (1989).

3. Nelson asserts that the trial court erred by permitting the State to introduce similar transaction evidence that impermissibly placed his character in evidence. When a probative connection is shown between the similar transaction and the charged offense and the evidence has been found admissible, the trial court has implicitly determined that the probative value of such evidence outweighs its prejudicial impact. *Sheppard v. State*, 267 Ga. 276, 280 (4) (476 SE2d 760) (1996).

The State offered as a similar transaction a robbery by force, a prior crime admittedly committed by Nelson. This evidence was offered to prove identity, bent of mind, and course of conduct. The victim recounted the details of the robbery, and the lead investigator, who captured Nelson after a car chase, disclosed incriminating admissions made by Nelson about that robbery. No error has been shown to have occurred in the admission of this evidence. See *Farley v. State*, 265 Ga. 622, 626 (2) (458 SE2d 643) (1995).

4. Nelson claims that because the similar transaction took place more than 11 years before the credit union robbery, it was too remote in time and should not have been allowed in evidence. When similar transaction evidence is otherwise admissible, the elapse of 11 years and 19 years has not demanded exclusion of such evidence. *Rich v. State*, 254 Ga. 11, 14 (1) (325 SE2d 761) (1985); *Cooper v. State*, 173 Ga. App. 254, 255 (325 SE2d 877) (1985); see *Gilstrap v. State*, 261 Ga. 798, 799 (1) (b) (410 SE2d 423) (1991). Here, although 11 years separated Nelson's earlier robbery from the credit union armed robbery, part of that time Nelson was unavailable to participate in other robberies due to his imprisonment. See *Moore v. State*, 207 Ga. App. 412, 416 (1) (b) (427 SE2d 779) (1993). It is, moreover, the similarity of the offenses within the meaning of *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991) that determines the admissibility of such evidence, not whether the span of time between offenses is brief. *Davis v. State*, 226 Ga. App. 83, 86 (3) (485 SE2d 508) (1997); see *Gilstrap*, supra.

5. Nelson asserts that the State's Exhibit 29, a certified copy of his prior conviction for robbery by force, should not have been admitted into evidence. He further claims that this exhibit should have been redacted.

A certified copy of a prior conviction may be used to supplement and in conjunction with testimonial evidence corroborating a similar transaction. *Hudson v. State*, 271 Ga. 477, 479 (2) (521 SE2d 810) (1999); *Burgess v. State*, 264 Ga. 777, 784 (18) (450 SE2d 680) (1994). Before admitting the exhibit at issue, the trial court instructed the State to redact it. The record confirms that the court's directive was followed, and only the redacted version, Exhibit 29A, went out to the jury. No error occurred.

6. In two assertions of error, Nelson claims that the trial court erred by allowing the State to introduce, over his objection, the testimony of his stepdaughter, a minor. Before she testified, Nelson objected on two grounds: "her tender age" and that she had been questioned by the Federal Bureau of Investigation without parental consent and without a parent present in violation of parental rights.

Whether a child witness is competent to testify within the meaning of OCGA § 24-9-7 is a matter which lies within the trial court's

sound discretion. *Wood v. State*, 195 Ga. App. 424, 425 (393 SE2d 720) (1990). No evidence showed that this ten-year-old witness lacked the use of reason or could not comprehend the nature of an oath. See *Norton v. State*, 263 Ga. 448, 449-450 (3) (435 SE2d 30) (1993); see OCGA § 24-9-5 (b). On the contrary, this witness testified that she knew the difference between a lie and the truth. She confirmed that she had told the truth to the jury and to the FBI. She identified the hat found at the crime scene as her "skully," confirming that it belonged to her and had her initials inscribed inside. The trial court did not abuse its discretion in permitting her to testify. *Wood*, supra. Nelson cites no authority, and we know of none, that would preclude the questioning of a minor without parental consent when the minor is not suspected of having committed a crime and is not in custody but is merely being queried about the ownership of a particular item. Compare, e.g., *Smith v. State*, 263 Ga. 363, 364 (2) (434 SE2d 465) (1993) (discussion of waiver of rights by juvenile offender).

7. Nelson contends that his trial counsel was ineffective for failing to file a motion in limine to exclude the testimony of his stepdaughter.

Trial strategy and tactics do not equate with ineffective assistance of counsel. *Phillips v. State*, 233 Ga. App. 557, 559 (504 SE2d 762) (1998). The decision as to which trial motions to file is a matter within the exclusive province of counsel after consultation with his client. *Austin v. Carter*, 248 Ga. 775, 779 (2) (c) (285 SE2d 542) (1982). Here, Nelson failed to show a reasonable probability that had this motion been filed before trial, the results of this trial would have been different. See *Brewer v. State*, 224 Ga. App. 656, 657-658 (2) (481 SE2d 608) (1997) (failure to satisfy either prong of the *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984) standard is fatal to an ineffectiveness claim).

8. Nelson contends that his trial counsel was ineffective for failing to list his wife as an alibi witness.

A decision not to pursue an alibi defense is a part of trial strategy and therefore is a matter with which this court will generally not interfere. *Polk v. State*, 225 Ga. App. 257, 259 (1) (c) (483 SE2d 687) (1997); accord *Phillips*, supra. At the motion for new trial hearing, Nelson's trial counsel testified that Nelson's wife failed to tell the FBI interviewer about any alibi and seemed hesitant to testify. Counsel explained that he elected not to call Nelson's wife as an alibi witness because he did not want to "put a reluctant witness up here to possibly perjure themself [sic]." Nelson has not overcome the presumption that his trial counsel's decision not to call this person as a witness was a reasonable exercise of professional judgment. *Melton v. State*, 222 Ga. App. 555, 557 (1) (474 SE2d 640) (1996).

9. Nelson contends that the State violated his due process rights by using a photographic spread that was unduly suggestive and gave rise to a substantial likelihood of misidentification. See *McCoy v. State*, 237 Ga. 62, 63 (226 SE2d 594) (1976). But having reviewed the photographic array, we cannot say that this array was impermissibly suggestive. *Selbo v. State*, 186 Ga. App. 779, 781 (368 SE2d 548) (1988); see *Widner v. State*, 203 Ga. App. 823, 824 (1) (418 SE2d 105) (1992) (unless array is impermissibly suggestive, the likelihood of irreparable misidentification need not be decided). Moreover, at least one witness's identification had an origin independent of the photographic array. *Arnold v. State*, 198 Ga. App. 449 (402 SE2d 69) (1991). In any event, the State presented other corroborating evidence that also pointed to Nelson's guilt. See *Belcher v. State*, 159 Ga. App. 146, 147 (1) (282 SE2d 760) (1981).

10. Finally, Nelson contends that the trial court erred in sentencing him to a life term as a recidivist during the pendency of an appeal of one of his prior convictions. The sentencing transcript belies this assertion. After Nelson objected to the inclusion of a shoplifting conviction that was then being appealed, the trial court refused to consider it, and the State offered a burglary conviction in its place.

*Judgment affirmed. Pope, P. J., and Miller, J., concur.*

DECIDED JANUARY 25, 2000.

*Orin L. Alexis*, for appellant.
*Spencer Lawton, Jr., District Attorney, Ann M. Elmore, Assistant District Attorney*, for appellee.