## A01A0033. SMITH v. THE STATE.
(552 SE2d 468)

MILLER, Judge.

A jury found Carl Keith Smith guilty of kidnapping, criminal attempt to commit robbery, burglary, possession of tools for the commission of a crime, and several traffic offenses including driving while license suspended, improper passing, reckless driving, speeding, and improper passing on the left. Due to his extensive criminal record, Smith garnered a recidivist sentence. Following the denial of his motion for new trial, Smith filed this appeal. Smith now claims that the trial court erred by failing to merge the four felony convictions, by admitting certain identification evidence, and by refusing to compel the State to turn over the 911 tape. He also alleges that he was deprived of effective assistance of counsel and that the State failed to prove the element of asportation for the offense of kidnapping. Finally, he contests the sufficiency of evidence as to his conviction for possessing tools for the commission of a crime. Having considered these issues and found them lacking in merit, we affirm.

When viewed in the light most favorable to the verdict, the evidence established that in mid-morning, a man came to the home of Jesse Hugh Jackson and his wife, Edna Jackson, to express interest in certain rental property. Although identifying himself as Tony Walker, he was, in fact, Carl Keith Smith. About two hours later, Smith returned to the Jacksons' residence, interrupting their lunch. Mrs. Jackson recognized Smith as the "nice young man" with whom she had chatted earlier. Smith told her that he wanted to give her another telephone number. When she left to retrieve a note pad, Smith entered their home without permission. Once inside, Smith

said, "I need money, go get your purse." Smith warned, "don't make me hurt — don't make me use my gun." After overcoming his initial shock at the sudden turn of events, Mr. Jackson, a retired farmer, began "hollering" at Smith "to get out of here," and started swinging his walking cane, making repeated attempts to strike Smith. While blocking the intended blows with his hands, Smith backed out the door. When Mrs. Jackson went to the bedroom to retrieve her purse, she instead contacted 911. While Mrs. Jackson was communicating with the 911 dispatcher, Mr. Jackson reported that Smith had driven away in a beige or tan-colored Saturn.

After being attacked with the cane, Smith fled. Shortly thereafter, an off-duty sheriff's deputy spotted a car matching the broadcast description of Smith and his vehicle. After driving erratically and committing multiple traffic violations while attempting to elude capture, Smith was eventually apprehended. Lieutenant Rodney Bennett noted a red, raised bump on Smith's forehead. Detective Keith Whiteside described seeing "a welt or a knot on the front portion of his head."

After being transported in separate police vehicles to the site of the traffic stop, Mr. Jackson and Mrs. Jackson each independently identified Smith as the perpetrator. These identifications occurred about 30 to 45 minutes from the time Smith left their home. In court, they also identified Smith as their attacker.

Detective David McNaughton inventoried the car that Smith was driving and found a dent puller, a flat blade screwdriver, and a lock cylinder that had been removed from a car. McNaughton testified that the dent puller is "used for pulling out locks on cars, to use to get in so they can do the ignition, steal cars." He explained that by removing the lock cylinder, entry to the vehicle can be gained. He demonstrated the process to the jury by using the dent puller and the screwdriver. According to McNaughton, based on the tool marks on it, the lock cylinder found in the trunk had been removed in this way.

1. Smith contends that the trial court erred by failing to merge the counts for kidnapping, criminal attempt to commit robbery, burglary, and possession of tools for the commission of a crime. Smith claims that when the "actual evidence" test is applied, all the evidence is used up and these four counts merged.[1] At the outset, "[t]he key question in determining whether a merger has occurred is whether the different offenses are proven with the same facts. For example, if one crime is complete before the other takes place, the two crimes do not merge. However, if the same facts are used to

---

[1] See *State v. Burgess*, 263 Ga. 143, 144-145 (1) (429 SE2d 252) (1993).

prove the different offenses, the different crimes merge."[2] The offenses at issue here did not merge. The crime of burglary was complete when Smith entered the Jacksons' home without authority and with intent to commit a theft therein, regardless of whether he accomplished his apparent purpose.[3] The offense of criminal attempt to commit robbery was complete when Smith performed an act constituting a substantial step toward the commission of that crime by directing Mrs. Jackson to get her purse and threatening to use a gun to force her compliance.[4] The offense of kidnapping was complete when, without lawful authority, Smith held Mrs. Jackson against her will and forced her to move to the bedroom to retrieve her purse.[5] Nor were the same facts used to prove that Smith was in possession of tools commonly used to commit theft.[6]

2. Smith claims that the trial court erred by admitting the identification testimony because the identification procedure was impermissibly suggestive and resulted in a substantial likelihood of misidentification. He points out that when the Jacksons identified him at the showup, he was the sole person in handcuffs and was surrounded by uniformed officers.

Such on-the-scene showups have been found not to be impermissibly suggestive when they are necessary under the practicalities of the situation.[7] The two separate one-on-one confrontations used here were vital to assisting an expeditious police investigation and in resolving possible doubts as to whether the correct individual was being detained.[8] Both witnesses had ample opportunity to observe Smith during earlier conversations with him, and both identified him at trial. Since there was not a substantial likelihood of misidentification, the trial court properly denied the motion to suppress.[9]

3. Smith contends that the trial court erred by refusing to compel the State to turn over the 911 tape to the defense. He asserts that the State violated the rules of discovery by failing to provide him with that tape which he claims would have been exculpatory within the meaning of *Brady v. Maryland*.[10]

OCGA § 17-16-4 (a) (3) requires the State to timely allow "the defendant . . . to inspect and copy . . . [audiotapes] . . . which are

---

[2] (Citations and punctuation omitted.) *Reeves v. State*, 233 Ga. App. 802, 805 (2) (505 SE2d 540) (1998).

[3] *Ricks v. State*, 178 Ga. App. 98, 101 (4) (341 SE2d 895) (1986).

[4] *Gould v. State*, 239 Ga. App. 312, 313 (2) (521 SE2d 365) (1999); see OCGA § 16-4-1.

[5] See *Ellis v. State*, 211 Ga. App. 605, 608 (2) (440 SE2d 235) (1994) (forcible movement of victim from her den to her bedroom was sufficient to show asportation).

[6] See OCGA § 16-7-20.

[7] *Bigsby v. State*, 210 Ga. App. 696, 697 (1) (436 SE2d 817) (1993).

[8] *Arnold v. State*, 155 Ga. App. 782, 783 (1) (272 SE2d 751) (1980).

[9] *Jones v. State*, 258 Ga. 25, 27 (3) (365 SE2d 263) (1988).

[10] 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

within the possession, custody, or control of the state or prosecution and are intended for use by the prosecuting attorney as evidence in the prosecution's case-in-chief or rebuttal at the trial. . . ." Prior to trial, defense counsel complained that despite a specific demand for copies of the 911 transmission, the State provided only a copy of the outgoing dispatch that followed the 911 call. The prosecutor responded that he did not have a copy of the 911 tape and explained that he did not intend "to call anyone from 911 or anything of that nature." The defense did not subsequently object or seek any relief whatsoever. Therefore, this issue was waived by Smith's failure to elicit a ruling by the trial court.[11]

4. Smith's assertion that he received ineffective assistance of counsel at trial lacks merit. To establish an ineffectiveness claim, an appellant must show not only that his counsel's performance was deficient but also that the deficiency prejudiced him.[12] Because the failure to satisfy both requirements is fatal to an ineffectiveness claim, absent a showing of prejudice, no inquiry need be made into counsel's alleged deficiencies.[13]

(a) Smith claims that his counsel failed to force the State to turn over discoverable material, the 911 tape, and witness statements. But, prior to trial, the court granted a defense motion to exclude the only statement not given to the defense during discovery. As to the 911 tape, at the hearing on the motion for new trial, the court expressed its displeasure at the State's failure to provide the 911 tape during discovery to the defense. The trial court, however, determined that tape was not a material piece of evidence in light of testimony at trial about the substance of the call and the sequence of events in response to that call. Whether a transcription of the 911 call or the audiotape itself could have assisted the defense is now speculative at best. The defense was provided a copy of the dispatch, a report compiled from the information reported to the 911 operator, and Smith was able to thoroughly cross-examine the Jacksons and the responding officers to probe for any ambiguities or discrepancies. Accordingly, even had the issue been preserved, Smith has not established the requisite deficiency and prejudice needed for reversal.[14]

(b) Smith contends that his trial counsel failed to object to testimony about the contents of the 911 call. But part of the defense strategy was to suggest that Smith had been misidentified as the perpetrator, by focusing on purported deviations or inconsistencies in the initial descriptions provided by the Jacksons in contrast to informa-

---

[11] See *Rooks v. State*, 238 Ga. App. 177, 178 (1) (518 SE2d 179) (1999).

[12] *Harper v. State*, 241 Ga. App. 865, 867 (3) (528 SE2d 317) (2000).

[13] *Ortiz v. State*, 222 Ga. App. 432, 434 (5) (474 SE2d 300) (1996).

[14] See id.

tion they later provided to investigators. Again, Smith has not established the requisite deficiency and prejudice to warrant reversal.

(c) Smith urges that his defense was impeded by his counsel's failure to call Daryl Williams as an alibi witness. At trial, two alibi witnesses testified, one of whom is Smith's brother. Both had criminal records. His brother vouched for Smith having been with him in the morning, and the other witness testified about the early afternoon. At the motion hearing, appellate counsel complained that Williams, who had been transported from a correctional facility and had waited to testify, was never called. Counsel claimed that Williams was the only person who could have testified about Smith's whereabouts for both the morning and the afternoon. However, no testimony from Smith's trial counsel was offered, and no proffer of Williams' testimony was made. Therefore, Smith has not overcome the presumption that the decision not to call Williams to testify was a reasonable exercise of professional judgment.[15] Since the trial court's finding that Smith was not denied effective assistance of counsel was not clearly erroneous, it must be affirmed.[16]

5. Smith contends that there was not sufficient evidence to prove the offense of kidnapping because the State failed to prove asportation, a required element of that crime.

A kidnapping conviction requires proof of an unlawful asportation of a person against his will.[17] Pushing and shoving a victim from one room to another are sufficient.[18] Compelling a victim to move from one room to another in response to a threatening command can constitute the necessary element of asportation.[19] "The determinative factor with regard to the element of asportation is whether appellant even momentarily caused the victims, without lawful authority or warrant, through intimidation and coercion, to engage in actions (including moving from one place to another) against their wills."[20] Here, there is some evidence that through intimidation, Smith coerced Mrs. Jackson to move from one place to another against her will. Smith threatened her and ordered her to get her purse, saying, "don't make me use my gun."[21] When asked whether she left the room of her own free will, Mrs. Jackson denied having done so. On cross-examination, when asked, "[d]id you see yourself as having an opportunity to go get help, and that's why you went in the room," she

---

[15] *Nelson v. State*, 242 Ga. App. 63, 66 (8) (528 SE2d 844) (2000).
[16] *Kelly v. State*, 267 Ga. 252, 253 (2) (477 SE2d 110) (1996).
[17] *Gibson v. State*, 233 Ga. App. 838, 841 (4) (505 SE2d 63) (1998).
[18] *Robinson v. State*, 210 Ga. App. 175, 176 (1) (435 SE2d 466) (1993).
[19] *Woodson v. State*, 273 Ga. 557, 558 (544 SE2d 431) (2001).
[20] (Citations and punctuation omitted.) *Gibson*, supra, 233 Ga. App. at 841 (4) (a).
[21] See *Williams v. State*, 236 Ga. App. 351, 354 (1) (c) (511 SE2d 910) (1999) (holding victims at gunpoint while driving around parking lot sufficient proof).

responded, "[h]e said go get your purse, and that's where my purse was, but when I got to the door, I went to the phone." When she left the kitchen, Mr. Jackson and Smith were embroiled in a struggle, and she could not be certain that her husband would gain control over the situation. Thus, Smith compelled her movement to the bedroom even though once there she managed to call 911 in lieu of retrieving her purse.[22] The trial court did not err in denying the motion for directed verdict.

6. Smith contends that the evidence was insufficient to prove the count for possession of tools for the commission of a crime. He points out that his girlfriend, Cecile Louise Wood, owned the Saturn in which the tools were found.

On the day of the crimes, Smith left Wood at her workplace at about 8:00 a.m. then used the car. Several hours later, when Smith was apprehended, he had sole possession of the vehicle. A dent puller, the flat blade screwdriver, and a cylinder were found in the trunk at that time. No evidence suggested that these tools belonged to Wood or that she used them in her employment as a research specialist for a major bank. It is undisputed that Smith had control over the vehicle and had access to the trunk. Thus, Smith had at least joint constructive possession of the tools.[23] From this evidence, a jury could conclude that Smith had the power to exercise dominion and control over the tools.[24] A detective demonstrated how thieves use these tools to gain illegal entry into a vehicle to steal the car or its contents. This evidence was sufficient to establish the crime of possession of tools for commission of a crime.[25]

*Judgment affirmed. Andrews, P. J., Johnson, P. J., Smith, P. J., Ruffin and Ellington, JJ., concur. Eldridge, J., dissents.*

ELDRIDGE, Judge, dissenting.

1. Even if one credits the majority's position and finds that Mrs. Jackson's movement to the bedroom was in order to get her purse in response to Smith's command, such movement was incidental to the armed robbery and in necessary furtherance thereof. If Mrs. Jackson had retrieved her purse and given it to Smith, the armed robbery would have been complete. And evidence of Mrs. Jackson's movement to get the purse and give it to Smith would have been "used up" in proving the completion of the armed robbery.[26] Simply because the armed robbery was halted and Smith forced to leave before the tak-

---

[22] See *Ellis*, 211 Ga. App. at 608 (2).

[23] *Shropshire v. State*, 201 Ga. App. 421, 422 (411 SE2d 339) (1991).

[24] See id.

[25] See *Russell v. State*, 243 Ga. App. 378, 381 (2) (532 SE2d 137) (2000).

[26] *Haynes v. State*, 249 Ga. 119, 120 (288 SE2d 185) (1982); *McClure v. State*, 179 Ga. App. 245, 246 (2) (345 SE2d 922) (1986).

ing was completed does not transform Mrs. Jackson's movement into a separate kidnapping. Her movement was not designed to better carry out a separate criminal act, such as rape; nor was it an instance where a victim is forced to a different spot before an assault or robbery is perpetrated.[27]

The majority considers the attempted armed robbery "complete" at the "substantial step" of ordering Mrs. Jackson to get her purse with the accompanying threat of the use of a weapon. But I submit that the attempted armed robbery was not "complete" until it was frustrated by Mr. Jackson. I believe the majority confuses what it takes for the State to prove an essential element of attempted armed robbery pursuant to OCGA § 16-4-1 with the offense in toto. "An attempt to commit a crime involves three elements: the intent to commit the crime, performance of a substantial step towards its commission, *and failure to complete the crime.*"[28] Thus, the attempted armed robbery was not suddenly "complete" and no longer extant at Smith's order to Mrs. Jackson to get her purse, making everything thereafter — including Mrs. Jackson's move to get her purse — fair game for the finding of separate additional offenses.

In this case, Mrs. Jackson's movement was not in any sense separate from the armed robbery attempted by Smith, but was integrally linked therewith as the method by which Smith was to receive the purse and thus complete the taking.[29] The fact that the armed robbery was ultimately frustrated and thus became "attempted," as opposed to completed, does not alter the sequence of events interrupted by Mr. Jackson's cane. The offense of kidnapping (if offense there was) should have merged into the offense of attempted armed robbery as a matter of fact for purposes of sentencing.[30]

2. As a matter of law, a directed verdict should have been entered on the kidnapping charge pursuant to Smith's motion therefor.

The record shows that defendant Smith was, without resistance and with his hands over his face, backing away from Mr. Jackson's raised cane and toward the front door at the time Mrs. Jackson made the decision to leave the living room in order to go into the bedroom and use the telephone. Before Smith began cowering and retreating, he had ordered Mrs. Jackson to get her purse, and Mrs. Jackson testified that her purse was in the bedroom. But Smith did not know

---

[27] *Love v. State*, 190 Ga. App. 264, 266 (378 SE2d 893) (1989) (Benham, J., concurring specially).

[28] (Emphasis supplied.) *Perkins v. State*, 224 Ga. App. 63, 64 (1) (479 SE2d 471) (1996); *Wittschen v. State*, 259 Ga. 448 (1) (383 SE2d 885) (1989).

[29] *Jordan v. State*, 242 Ga. App. 408, 409 (3) (530 SE2d 42) (2000).

[30] OCGA § 16-1-6 (1).

where her purse was in order to "force" her into the bedroom, and immediately thereafter — at the time Mrs. Jackson decided to leave the living room — Smith did not know where she went, when she went, or why she went because he was not concerned with her or her purse anymore; he was busy trying to keep from getting beaten with Mr. Jackson's cane and to make it out the front door.[31] As a matter of law, Smith could not have "forced" Mrs. Jackson into the bedroom when he did not know where she was going, did not know when she left, and Mrs. Jackson determined both the time of her going, the place of her going, and what she would do when she got there.

While any movement will suffice to prove asportation, the offense of kidnapping, i.e., "abducting or stealing away any person without lawful authority and holding such person against her will," does not encompass the instant scenario wherein the defendant is attempting to leave the scene at the point the victim makes the decision to move to a location unknown to the defendant and to dial 911, an earlier "threatening command" to get one's purse notwithstanding.

DECIDED JULY 9, 2001 — 

*Bischoff & White, James E. Bischoff,* for appellant.
*William T. McBroom III, District Attorney, Daniel A. Hiatt, Assistant District Attorney,* for appellee.

---

[31] Compare *Woodson v. State*, 273 Ga. 557, 558 (544 SE2d 431) (2001) (defendant's order to "go in there" along with brandishing of a knife and defendant's physical accompaniment of victim into room sufficient to show asportation based on threatening command). See also *Woodson v. State*, 242 Ga. App. 67, 68 (530 SE2d 2) (2000).