599 S.E.2d 256 (2004)
267 Ga.App. 283
WILLIAMS
v.
The STATE.
No. A04A0194.
Court of Appeals of Georgia.
May 6, 2004.
*257 Anne L. Durden, Bartow, for appellant.
Steven Askew, District Attorney, Mary K. Mitchell, Assistant District Attorney, for appellee.
ANDREWS, Presiding Judge.
Howard Lawon Williams, convicted by a jury of four counts of child molestation,[1] appeals from the trial court's denial of his motion for new trial, claiming that the evidence was legally insufficient, errors were made in admission of evidence, and his counsel rendered ineffective assistance. Finding no error, we affirm.
1. On appeal from a criminal conviction, the evidence is construed in a light most favorable to the verdict, and Williams no longer enjoys a presumption of innocence. This Court determines only the legal sufficiency of the evidence presented below and does not weigh evidence or assess credibility of the witnesses. As long as there is some evidence, even though contradicted, to support each necessary element of the State's case, the verdict will be upheld. Moore v. State, 254 Ga.App. 134, 561 S.E.2d 454 (2002).
So viewed, the evidence was that in 2000, L.V., then a 13-year-old seventh grader, reported to her teacher that she had been molested, resulting in an investigation. Investigator Beecher interviewed L.V. who told him that she had gone to her friend Z.M.'s house twice to spend the night and that, on both occasions, a man called "Baldy" (Williams) was there. Williams was Z.M.'s stepfather, having married Georgia Matthews, her mother. L.V. also knew Matthews because she was her stepsister. L.V. said Z.M. told her, on her first visit, that she and Williams had been "messing around." Z.M., also 13, demonstrated how she would dance in front of Williams, "popping" or placing her hands on her knees and moving her *258 backside in front of him. Later that night, Williams put a "nasty movie" on the VCR and made L.V., Z.M., and S.W., another friend two years younger, watch. L.V. described the movie as one involving men and women doing stuff, and the woman would "suck his thing or whatever."
Following the movie, Williams flipped a coin to see which of the three girls was first. Then, L.V., Z.M., and S.W. took turns going into Z.M.'s bedroom with Williams. When it was L.V.'s turn, Williams tried to penetrate her vagina with his penis and touched her on her stomach and vagina. She said she kept moving away from him. L.V. did not see what happened with Williams, Z.M., and S.W. in the bedroom.
The second time L.V. spent the night, only she and Z.M. were there. Again, Williams put on some videos and then had sexual intercourse with Z.M. on the living room floor in L.V.'s presence. According to L.V., Williams again tried to have sex with her. When L.V. heard that another friend was going to spend the night with Z.M., she told that friend what had happened, and the friend urged her to tell her teacher, which L.V. did.
According to Z.M., Williams began molesting her when she was eight years old. Because he worked for the Housing Authority, Williams had access to empty apartments to which he took Z.M. and had sexual intercourse with her. Williams would threaten to kill her if she told anyone and also bought her things to keep her quiet. When she was 12 years old, Z.M. became pregnant. When asked by her mother who the father was, Z.M. initially identified Williams, but later changed her story, saying a 13-year-old boy did it, because she did not want her mother to "be hurting real bad." Z.M. also recalled the events when L.V. came to spend the night, including the nasty movie and Williams then calling the girls one by one into the room after flipping a coin to see who was first.
S.W. and S.R. both said Williams began molesting them when they were eight years old. Both of their mothers dated Williams at various times. Both said Williams would play a nasty movie and would have sex with each of them separately.
S.J., who was 25 years old at the time of the trial in 2002, testified regarding Williams' conduct with her when she was 13 years old and he was 19 years old, which was introduced as a similar transaction. S.J. became pregnant and delivered a child by Williams a few days after turning 14. Although S.J. and her mother discussed pressing charges against Williams, they did not because Williams was a good friend of S.J.'s mother and the mother was suffering from alcoholism at the time. Williams did sign a consent agreement to provide support for this child.
As to Williams' sixth enumeration of error, there was no error in the trial court's denial of his motion for new trial challenging the legal sufficiency of the evidence. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Little v. State, 260 Ga.App. 87(1), 579 S.E.2d 84 (2003).
2. Williams argues that denial of his motion for new trial was error because the admission of the evidence regarding his relationship with S.J. was improper because this act was too remote in time from the charged acts.
At a pre-trial hearing conducted pursuant to Williams v. State, 261 Ga. 640, 641(2), 409 S.E.2d 649 (1991), the trial court determined the similar transaction evidence was admissible to establish Williams' pattern of conduct toward young girls. The trial court's finding of similarity or connectivity is not disturbed unless it is clearly erroneous. Smith v. State, 273 Ga. 356, 357(2), 541 S.E.2d 362 (2001); Jones v. State, 255 Ga.App. 609, 611, 565 S.E.2d 915 (2002).
The independent act does not have to be identical to the crime charged. Wells v. State, 237 Ga.App. 109, 113(4), 514 S.E.2d 245 (1999). "The proper focus is on the similarity, not the differences, between the separate crimes and the crime in question." Wayne v. State, 269 Ga. 36, 39(3), 495 S.E.2d 34 (1998). "Particularly in the area of sexual offenses, the admissibility of similar transaction evidence is liberally construed." (Citation omitted.) Goodroe v. State, 238 Ga.App. 66, 68(2)(b), 518 S.E.2d 139 (1999). See also *259 Hoffman v. State, 259 Ga.App. 131, 133(1), 576 S.E.2d 102 (2003).
Here, all the acts involved pre-teenage or early teenage girls. All of the girls named as victims in the indictment, with the exception of L.V., who reported the abuse, were children of women with whom Williams was involved. Williams was married to Matthews, Z.M.'s mother. S.W. said Williams used to go with her mother, and Williams fathered two children by S.R.'s mother. Similarly, S.J. testified that her mother was a "good friend" of Williams and that was one reason her mother encouraged her not to prosecute him. Also, Z.M. and S.J. were both impregnated by Williams at the ages of 12 and 13, respectively.
The fact that the incident with S.J. occurred 12 years prior to the trial (ten years prior to the initial report of the abuse in 2000) goes to the weight and credibility of that evidence, not its admissibility. Williams v. State, 263 Ga.App. 22, 24(2), 587 S.E.2d 187 (2003); Turner v. State, 245 Ga.App. 294(2), 536 S.E.2d 814 (2000).
The incident with S.J. being otherwise admissible, the time lapse did not require the trial court's exclusion of it. Williams, supra, 263 Ga.App. at 24(2), 587 S.E.2d 187.
3. Williams' second enumeration claims error in denial of his motion for new trial because of the improper and prejudicial admission of pornographic videotapes.
Georgia Matthews, mother of Z.M. and stepsister of L.V., turned the five videotapes at issue over to Beecher. She and Williams had watched some of them years before, and the tapes were kept behind other items on the closet shelf in the bedroom she shared with him. Beecher watched the tapes and found several scenes that were similar to scenes described to him by the four victims. The trial court allowed the tapes to be introduced into evidence, but they were not viewed by the jury.[2]
In Simpson v. State, relied upon by Williams, the Supreme Court set out the following clear and cogent rule:
In a prosecution for a sexual offense, evidence of sexual paraphernalia found in defendant's possession is inadmissible unless it shows defendant's lustful disposition toward the sexual activity with which he is charged or his bent of mind to engage in that activity. Under this rule, sexually explicit material cannot be introduced merely to show a defendant's interest in sexual activity. It can only be admitted if it can be linked to the crime charged.

(Emphasis supplied.) Simpson v. State, 271 Ga. 772, 774(1), 523 S.E.2d 320 (1999).
In Simpson, the material at issue consisted of sexually explicit letters written by Simpson to his girlfriend which did allude to his fondness for performing oral sex. The charged offenses of statutory rape and child molestation, however, were performed on the girlfriend's 14-year-old sister. The letters did not contain any reference to 14-year-old or young girls in general and there was no indication that the 14-year-old had been shown the letters by Simpson or her sister.
Williams argues that the fact that the tapes were not found in Williams' possession precluded their admission under Simpson, supra. That, however, is a too narrow reading of Simpson, in our opinion. The letters in Simpson were sent to and, apparently, turned over to authorities by the victim's sister, who reported the alleged sexual offenses. See Simpson v. State, 234 Ga.App. 729, 731(3), 507 S.E.2d 860 (1998). The fact that made the letters inadmissible was that they were not linked to the acts for which Simpson was charged.
Here, all four victims were shown sexually explicit videotapes before their molestation and this was sufficient for the introduction of the videotapes. Greulich v. State, 263 Ga.App. 552, 553(1), 588 S.E.2d 450 (2003); see Davidson v. State, 231 Ga.App. 605, 608-609(3), 499 S.E.2d 697 (1998).
*260 There was no error in denial of the motion for new trial on this ground.
4. Williams argues, in his third enumeration, that the admission of the testimony of Pieruicci, Director of External Affairs for Planned Parenthood where Z.M. underwent her abortion, was error.
The objection argued here,[3] that the mention of abortion was irrelevant and destroyed the jurors' impartiality, was not made below, however. The objection voiced below was that Pieruicci was not the custodian of the records of Planned Parenthood. Having failed to interpose the objection made here below, Williams has waived the right to assert this enumeration of error on appeal. Williams v. State, 236 Ga.App. 351, 355(2), 511 S.E.2d 910 (1999).
Even had Williams objected, Pieruicci's testimony that Z.M. had an abortion was cumulative of Z.M.'s properly admitted testimony to this effect. There was no error.
5. During Williams' closing argument, counsel asked the rhetorical question, "[w]hat kind of person has sex with someone who had sex with your child?" Matthews, the mother of Z.M., responded by shouting out "[s]omebody who wanted to blow his brains out."
The trial court immediately had Matthews escorted from the courtroom and advised the remaining spectators that they had to remain quiet. No further corrective action was requested by Williams nor was a motion for mistrial made until, following the lunch break, a motion for mistrial was made.
Pretermitting the issue of the timeliness of Williams' motion for mistrial, we conclude the trial court did not abuse its discretion by denying the motion when the person showing an emotional reaction to the evidence had been immediately removed from the courtroom and curative instructions were given following the subsequent polling of the jury to see if the comment had been heard.[4] See Todd v. State, 274 Ga. 98, 102(5), 549 S.E.2d 116 (2001); Sheppard v. State, 235 Ga. 89, 91(2), 218 S.E.2d 830 (1975).
6. Finally, Williams argues that his trial counsel rendered ineffective assistance during his trial because he failed to request an instruction regarding the similar transaction evidence be given immediately following that testimony.[5]
Although appellate counsel did include this claim in her amended motion for new trial and, according to the trial court's order denying that motion trial counsel did testify, no transcript of the hearing on the motion for new trial has been provided to this Court. In order to show ineffective assistance of counsel, Williams "must overcome the strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct." Baker v. State, 251 Ga.App. 377, 379(2), 554 S.E.2d 324 (2001). Without trial counsel's testimony before us, "`it is extremely difficult [for Williams] to overcome this presumption.' [Cit.]" Rivers v. State, 271 Ga. 115, 117(2), 516 S.E.2d 525 (1999); Russell v. State, 269 Ga. 511(1), 501 S.E.2d 206 (1998). Therefore, we must presume that the trial court's conclusion on this issue was correct and no grounds for reversal have been presented.[6]Adams v. State, 234 Ga.App. 696, 697(2), 507 S.E.2d 538 (1998).
Judgment affirmed.
MILLER and ELLINGTON, JJ., concur.
NOTES
[1] Count 1, attempted sexual intercourse with L.V.; Count 2, sexual intercourse with Z.M.; Count 3, sexual intercourse with S.W.; Count 4, attempted sexual intercourse with S.R.
[2] The tapes were labeled "XXX  Caught in the Act"; "XXX  Haed [sic]"; "XXX  She Squirts"; "Sexy Dancer # 5"; and "XXX  Starbaner."
[3] Cook v. State, 232 Ga.App. 796(1), 503 S.E.2d 40 (1998), relied upon by Williams, is inapposite. There, the accused wanted to introduce evidence regarding the rape victim's intent to have an abortion and this was found inadmissible, but the court did allow the accused to present evidence that he and the victim, a former girlfriend, argued before the sexual intercourse, which he claimed was consensual.
[4] Only three jurors indicated they had even heard the comment.
[5] Such an instruction was given during the trial court's charge to the jury following completion of the evidence.
[6] "It cannot be presumed from a silent or non-existent transcript of a hearing below that a proper objection was interposed, and hence we must conclude that these enumerations are waived." Boles v. Lee, 270 Ga. 454, 455(1), 511 S.E.2d 177 (1999).