64473. ROBINSON v. THE STATE.
64474. STRICKLAND v. THE STATE.
64477. COWART v. THE STATE.

Pope, Judge.

Appellants were indicted, tried and convicted of violating the Georgia Controlled Substances Act by selling phencyclidine and they were each sentenced to fifteen years. The events leading to the drug sale began two days earlier when Don Golden, a GBI agent posing as a music promoter, contacted appellant Robinson in an attempt to

arrange a purchase of cocaine and phencyclidine. Appellant Cowart joined in the negotiations and a sale of a kilo of cocaine was set up. This sale fell through but another sale, of both cocaine and phencyclidine, was set up the next day for the following day. Appellants Robinson and Cowart, along with appellant Strickland, met with Agent Golden and another undercover agent in a Holiday Inn parking lot as planned. After Robinson handed Agent Golden a half pound of phencyclidine the arrests were made.

### Case No. 64473

1. Appellant Robinson essentially raises a single issue on his appeal. He contends that, because no money changed hands, no sale was completed and therefore he could not permissibly be convicted of the offense of selling phencyclidine. The issue is apparently (and surprisingly) still an open one in Georgia. "Sale" is not defined in the Georgia Controlled Substances Act, Code Ann. § 79A-801 et seq. (now OCGA § 16-13-20 et seq.), and the term has not been bindingly defined in the drug context either by this court or by our Supreme Court.

The foremost case in Georgia bearing on the issue is *Johnson v. State,* 154 Ga. App. 353 (1) (268 SE2d 406) (1980). In that case, the court quoted in part from the language of Code Ann. § 109A-2—401 (2) (now OCGA § 11-2-401 (2)), providing that a sale is complete ("title passes to the buyer") when the seller delivers the goods ("at the time and place at which the seller completes his performance with reference to the physical delivery of the goods"). *Johnson v. State,* supra at 353-54. As recognized in *Johnson,* this provision must be read with Code Ann. § 109A-2—106 (1) (now OCGA § 11-2-106 (1)), which defines a "sale" as the "passing of title from the seller to the buyer for a price." See id. at 354. Doing so, the court concluded that the "sale . . . was completed when [defendant] Johnson caused the marijuana to be delivered to [the undercover narcotics agent]." Id. However, as Robinson points out, money was exchanged for the drugs in that case, so the statement conceptually does not have the full force of a holding. It is, however, highly persuasive. See also *Chambers v. State,* 154 Ga. App. 620 (269 SE2d 42) (1980), where a conviction of sale of drugs was affirmed where money was showed, but not given, to defendant by the agents; *Dunkum v. State,* 138 Ga. App. 321 (226 SE2d 133) (1976), where the fact that defendants were arrested as the agent started to pay for the drugs was not questioned, but the conviction of sale of drugs was reversed on other grounds.

The persuasiveness of the statement in *Johnson* is bolstered not only by the fact that it was dictum of this court (and notably of two judges on this panel), but also because it is in accord with the general

view. The term "sale" is generally given a broader definition in the drug context than in other fields of law, so as to include not only the exchange of the goods for valuable consideration, but also barter and gift and often the offer or agreement to sell, exchange, give or otherwise transfer the drugs to another. 28 CJS Supp. 240, Drugs & Narcotics, § 164; 25 AmJur2d 299, Drugs, Narcotics & Poisons, § 22.

Sixty years ago the United States Court of Appeals for the Sixth Circuit dealt with the issue in what we consider to be a thoroughly rational manner: "The claim of the defendant in error that the evidence failed to show a completed sale is merely technical. The price had been agreed upon, and the drugs delivered by the defendant to [the inspector], accepted by him, and were then in his possession and under his control. True, [the inspector] had not yet paid the defendant the price agreed upon, at the time he placed him under arrest. Nevertheless, if the drugs sold and delivered had been commodities of lawful or unrestricted commerce, the seller, upon this state of facts, could have maintained an action for the contract price of goods sold and delivered to the buyer." Fisk v. United States, 279 F 12, 15 (6th Cir. 1922).

Drawing upon these authorities, we expressly affirm the referenced language in *Johnson v. State,* supra, and hold that a sale of drugs is complete when the seller delivers the drugs to the feigned buyer. Because the trial court concluded likewise in denying Robinson's motion for directed verdict of acquittal, we find no error.

Robinson argues further that because the General Assembly listed both "sell" and "deliver" among the unlawful acts in Code Ann. § 79A-811 (b) (now OCGA § 16-13-30 (b)), it intended them to be separate and distinct crimes. He then argues that because the state alleged a sale of phencyclidine and only proved a delivery of phencyclidine, there is a fatal variance between the allegata and the probata. We disagree. As we explained supra, a sale necessarily includes a delivery of goods for a price and the sale is complete upon delivery. See generally *Harmon v. State,* 235 Ga. 329 (2) (219 SE2d 441) (1975).

*Case No. 64474*

2. Appellant Strickland asserts ten enumerations of error on his appeal. In his first and second enumerations of error, he challenges the sufficiency of the evidence, asserting that the evidence showing he was present during the drug transaction, driving the automobile used by appellants, was insufficient to support his conviction. This was not, however, the only evidence offered against him. Testimony was also offered regarding his conduct at the scene. Moreover, Strickland assumed the attendant risks by offering his own

testimony, which can tend to inculpate as well as exculpate. We have reviewed the transcript and find that any rational trier of fact could have reasonably found from the evidence adduced at trial against Strickland proof of the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

3. Strickland's remaining enumerations of error are also without merit. Four of the enumerations challenge portions of the jury charge in a vague and conclusory manner and, after reviewing the charge as a whole, we find no error. See *Wood v. State,* 243 Ga. 273 (2) (253 SE2d 751) (1979); *Hawes v. State,* 240 Ga. 327 (8) (240 SE2d 833) (1977). Two of the enumerations raise the claim that the state violated the rule of sequestration. Strickland raised the claim in the trial court, but failed to substantiate it there and he has further failed to substantiate it here. We therefore reject it. See *Smith v. State,* 244 Ga. 814 (2) (262 SE2d 116) (1979), and *Bennett v. State,* 107 Ga. App. 284 (3) (129 SE2d 820) (1963), quoted therein at 818. The remaining two enumerations of error refer exclusively to supplemental briefs never filed and are thus abandoned. Court of Appeals Rule 15(c)(2) (Code Ann. § 24-3615 (c)(2)) (not recodified in the OCGA).

### Case No. 64477

4. Appellant Cowart asserts five enumerations of error on his appeal. His first contention is that the trial court erred in denying his motion for severance . "Whether or not a motion for severance should be granted rests in the sound discretion of the trial court, and his determination of this issue will not be disturbed absent a clear showing of prejudice and a consequent denial of due process. *Cain v. State,* 235 Ga. 128 (218 SE2d 856) (1975)." *Parrish v. State,* 160 Ga. App. 601, 602 (287 SE2d 603) (1982); see *Cole v. State,* 162 Ga. App. 353 (6) (291 SE2d 427) (1982); *Henderson v. State,* 162 Ga. App. 320 (4) (291 SE2d 422) (1982); Code Ann. § 27-2101 (now OCGA § 17-8-4); see also *Murphy v. State,* 246 Ga. 626 (2) (273 SE2d 2) (1980); *Montgomery v. State,* 156 Ga. App. 448 (1) (275 SE2d 72) (1980). This burden on Cowart to make a clear showing of prejudice amounting to a denial of due process requires him "to do more than raise the possibility that a separate trial would give him a better chance of acquittal." *Cain v. State,* supra at 129.

Cowart contends that the three tests enunciated in *Cain* have been satisfied. We disagree. We find that none of the tests have been met. The first two tests concern whether the jury was most likely able to render a verdict as to each appellant based upon the evidence brought against him rather than the spillover effect of evidence going against another. *Cain v. State,* supra at 129; see *Parrish v. State,* supra

at 602-03; see also *Crawford v. State,* 148 Ga. App. 523 (251 SE2d 602) (1978). The transcript reveals substantial evidence against Cowart, showing him present at the sale and involved in the negotiations of that sale. Compare *Crawford v. State,* supra. The jury also had the benefit of Cowart's own testimony to consider along with the state's evidence. Moreover, even if the jury was affected by the stronger case made out against appellant Robinson, much, if not all, of that evidence was admissible against Cowart on the conspiracy theory under which the state prosecuted the case (see Division 5, infra). *Montgomery v. State,* supra.

The third test is whether the appellants' defenses were antagonistic. Both Cowart and Strickland denied any knowledge of the drug deal, claiming they were "just along for the ride," and Robinson did not present any affirmative defense. Thus, the defenses were clearly not antagonistic. See *Cole v. State,* supra.

Cowart asserts further that severance should have been granted because, as it turned out, he lost his right to open and close in the closing arguments because a co-defendant admitted evidence. See in this regard Code Ann. § 27-2201 (now OCGA § 17-8-71); *Calhoun v. State,* 135 Ga. App. 609 (3) (218 SE2d 316) (1975). However, he has pointed to no authority, and we know of none, recognizing this as a ground for severance. The assertion does no more than suggest he might have had a better chance of an acquittal or a hung jury had he been in the more advantageous argument position. It does not clearly show prejudice amounting to a denial of due process and therefore does not give us cause to disturb the ruling of the trial court.

5. Cowart's second contention is that reversible error was committed by the admission of testimony regarding an allegedly separate cocaine deal. Contrary to his assertion that this was evidence of an independent crime, we find it clear from the transcript that the deal negotiated, culminating in the sale of phencyclidine, was for the cocaine as well as the phencyclidine and that Cowart and appellant Robinson were involved in the negotiations. A conspiracy thus having been established (see Code Ann. § 26-3201 (now OCGA § 16-4-8)), and the negotiations for a sale of cocaine being part of that conspiracy, the evidence pertaining to the cocaine was admissible. *Chesser v. State,* 141 Ga. App. 657 (2) (234 SE2d 121) (1977); see also *Black v. State,* 154 Ga. App. 441 (1) (268 SE2d 724) (1980). Cowart also argues that only Robinson was connected to the negotiations for the cocaine, but, even if this were true (there being evidence by which the jury could have found it was not), the evidence was admissible also against Cowart as a co-conspirator. *Chesser v. State,* supra; Code Ann. § 38-306 (now OCGA § 24-3-5).

6. Cowart next raises the claim that the state violated the rule of

sequestration. His claim, like appellant Strickland's (see Division 3, supra), is deficient in that it is wholly unsubstantiated and we reject it as well. His remaining two enumerations of error are also without merit. His contention that no sale was proved is essentially identical to Robinson's addressed in Division 1, supra, and no further discussion is required. His last contention is that the charge to the jury was defective because it contained a charge on conspiracy and because the court charged the jury that they were the "sole judges of the guilt or innocence of the defendants at bar." The charge on conspiracy was warranted because there was evidence of a conspiracy (see Division 5, supra). *Greene v. State,* 155 Ga. App. 222 (2) (270 SE2d 386) (1980); *Chesser v. State,* supra. The quoted extract from the charge is not patently erroneous in isolation and, when read in proper context and with the charge as a whole, is above reproach. See *Spradlin v. State,* 160 Ga. App. 132 (1b) (286 SE2d 310) (1981).

*Judgment affirmed. Deen, P. J., and Sognier, J., concur.*

DECIDED NOVEMBER 18, 1982 —
REHEARING DENIED DECEMBER 6, 1982 IN CASE NO. 64473 — 

*John C. Carbo III,* for appellant (case no. 64473).
*W. Washington Larsen, Jr.,* for appellant (case no. 64474).
*Stephen E. Boswell,* for appellant (case no. 64477).
*Robert E. Keller, District Attorney, Michael D. Anderson, Assistant District Attorney,* for appellee.