## A92A0299. BURGESS v. THE STATE.
### (420 SE2d 590)

ANDREWS, Judge.

Ronald Burgess was indicted and convicted for selling and distributing a noncontrolled substance representing it to be a controlled substance and for attempting to elude a police officer and appeals. Evidence at trial was that Burgess sold a substance which he represented to be methamphetamine ("crank") to an undercover agent. The substance was not methamphetamine, but was a mixture containing niacinamide, a vitamin, and a decongestant.

At trial, Burgess admitted that he sold the undercover agent the substance; his defense was entrapment. There was conflicting testimony as to whether Burgess expressly represented to the agent that the substance for which she paid $700 was methamphetamine.

In his first enumeration of error, Burgess contends that the trial court erred in failing to give the jury his written request to charge on OCGA § 16-13-30.2 because that offense is a lesser included offense of OCGA § 16-13-30.1, on which the jury was charged.

The indictment charged that Burgess unlawfully did "sell, and distribute a noncontrolled substance upon the express representation that the substance was a controlled substance, the same being Methamphetamine, commonly known as 'crank.' " There was no indication from the indictment as to which Code section Burgess was charged with violating.

At the conclusion of the trial, the jury was charged on OCGA § 16-13-30.1 (a) (1) which provides: "It is unlawful for any person knowingly to manufacture, deliver, distribute, dispense, possess with the intent to distribute, or sell a noncontrolled substance upon either:

"(A) The express or implied representation that the substance is a narcotic or nonnarcotic controlled substance;

"(B) The express or implied representation that the substance is of such nature or appearance that the recipient of said delivery will be able to distribute said substance as a controlled substance; or

"(C) The express or implied representation that the substance has essentially the same pharmacological action or effect as a controlled substance."

The trial judge failed to charge the jury on OCGA § 16-13-30.2 (a), which provides: "[a]ny person who knowingly manufactures, distributes, or possesses with intent to distribute an imitation controlled substance as defined in paragraph (12.1) of Code Section 16-13-21 is guilty of a misdemeanor of a high and aggravated nature." Paragraph 12.1 of OCGA § 16-13-21 defines an "imitation controlled substance" as:

"(A) A product specifically designed or manufactured to resemble the physical appearance of a controlled substance, such that a reasonable person of ordinary knowledge would not be able to distinguish the imitation from the controlled substance by outward appearances; or

"(B) A product, not a controlled substance, which by representations made and by dosage unit appearance, including color, shape, size, or markings, would lead a reasonable person to believe that, if ingested, the product would have a stimulant or depressant effect similar to or the same as that of one or more of the controlled substances included in Schedules I through V of Code Sections 16-13-25 through 16-13-29."

We are unable to find any cases which address the relationship between OCGA §§ 16-13-30.2 and 16-13-30.1. Nonetheless, "it is a basic law that a defendant in a criminal case is entitled to have the jury consider every lesser offense which the evidence authorizes which is includable in the crime for which he was indicted. A crime is so included when: (1) It is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of the crime charged; or (2) It differs from the crime charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission." (Citations and quotations omitted.) *Sims v. State*, 197 Ga. App. 214, 217 (5) (398 SE2d 244) (1990). "The correct rule is that a written request to charge a lesser included offense must always be given if there is any evidence that the defendant is guilty of the lesser included offense. 'The state or the accused may, by written application to the trial judge at or before the close of the evidence, request him (or her) to charge on lesser crimes that are included in those set forth in the indictment or accusation, and his (or her) failure to so charge as requested, if the evidence warrants such requested charge or charges, shall be error.'" (Emphasis omitted.) *State v. Alvarado*, 260 Ga. 563, 564 (397 SE2d 550) (1990).

At the outset, we note that apart from the different definitions of the substances which the statute seeks to regulate, OCGA § 16-13-30.2 does appear to be a lesser included offense of OCGA § 16-13-30.1, since it is established by proof of the same or less than all the facts or

a less culpable mental state than is required to establish the commission of OCGA § 16-13-30.1. See *Sims*, supra.

Therefore, in order to determine whether it was necessary for the trial judge to charge on OCGA § 16-13-30.2, we must determine whether the substance which Burgess sold fell within the definition of that statute. OCGA § 16-13-30.1 applies to "non-controlled substances" which are represented to be controlled substances; OCGA § 16-13-30.2 applies to "imitation controlled substances." The State argues that it was not necessary for the trial court to charge on the latter statute because the substance here was not an imitation controlled substance since § 16-13-30.2 concerns pills, tablets, and products which are created solely to imitate controlled substances. The State argues that § 16-13-30.2 does not apply to substances which coincidentally resemble controlled substances.

We find the State's argument unconvincing in this case. Despite the possible esoteric distinctions between the two types of substances, both statutes apply to counterfeit controlled substances. OCGA § 16-13-30.2 applies to products which by representations made and by appearance appear to be controlled substances. In the instant case, evidence at trial was that the primary substance in the mixture Burgess sold, niacinamide, resembled methamphetamine in appearance. This fact combined with evidence that Burgess represented that the substance was methamphetamine indicates that the substance fit within the definition of § 16-13-30.2. Because of the fact that the substance here was an imitation controlled substance, it was necessary for the trial judge to charge the jury on OCGA § 16-13-30.2 and his failure to do so was error. Although we concede that these two statutes are ambiguous, we are mindful that the clarification of this area is a matter for legislative determination.

Because of our determination that the jury should have been instructed according to OCGA § 16-13-30.2, it was also necessary for the judge to instruct the jury according to OCGA § 16-13-21 (12.1) as claimed in Burgess' second enumeration. Accordingly, we reverse Burgess' conviction for violation of OCGA § 16-13-30.1 because of the trial court's failure to charge on OCGA § 16-13-30.2, and affirm his conviction of eluding a police officer. Because of our conclusion we need not specifically address Burgess' motion for a supersedeas bond.

*Judgment affirmed in part and reversed in part. Sognier, C. J., McMurray, P. J., Birdsong, P. J., Pope and Cooper, JJ., concur. Carley, P. J., Beasley and Johnson, JJ., concur in part and dissent in part.*

BEASLEY, Judge, concurring in part and dissenting in part.

I respectfully dissent with respect to the reversal of conviction for a violation of OCGA § 16-13-30.1. The evidence would not support a

conviction of OCGA § 16-13-30.2, so defendant was not entitled to a charge on it.

The evidence showed that the substance involved was 26 grams, just under one ounce, of a brown powder which the undercover buyer thought from appearance and taste was methamphetamine, a controlled substance which is commonly known as "crank." It was sold to her as crank for $700. Laboratory testing revealed that the main ingredient in the powder was niacinamide, also known as nicotinamide, a vitamin which is regarded as a "dangerous drug" in Georgia. See OCGA § 16-13-71 (b) (640.3). It is to be sold only by prescription and costs about $10-$15 for a fairly large bottle. This ingredient is commonly used as a cutting agent in illegal methamphetamine and sometimes it is used to cut cocaine. The powder also "possibly" contained a little ephedrine, an over-the-counter decongestant.

In 1982 the General Assembly amended certain portions of the controlled substances law by redefining "counterfeit substance," by adding a definition for "noncontrolled substance" and by adding a new crime, i.e., certain activities with respect to the "noncontrolled substance." Ga. L. 1982, p. 2370; OCGA §§ 16-13-21 (6) & (29); 16-13-30.1. Accordingly:

"Noncontrolled substance" means "any drug or other substance other than a controlled substance as defined by paragraph (4) of this Code section."

Paragraph (4) defines "controlled substance" as "a drug, substance, or immediate precursor in Schedules I through V of Code Sections 16-13-25 through 16-13-29 and Schedules I through V of 21 C.F.R. Part 1308." Any substance which contains any quantity of methamphetamine is a Schedule II controlled substance. OCGA § 16-13-26 (3) (B).

In 1988 the General Assembly again amended the controlled substances law to add a crime, i.e., certain activity involving "an imitation controlled substance," and to define that term. Ga. L. 1986, p. 1065. It focuses on certain substances which are "noncontrolled substances" and puts them in a lesser crime category and affords them a less severe punishment. OCGA §§ 16-13-21 (12.1) and 16-13-30.2. (For some reason it leaves out "deliver," "dispense," and "sell" from the list of expressly prohibited activities.) We do not have before us the legitimacy of the disparate treatment.

The definition of "imitation controlled substance," which is quoted in the majority opinion, is what is important here. There was no evidence, nor could it reasonably be inferred, that the niacinamide was "specifically designed or manufactured to resemble the physical appearance of" methamphetamine. See OCGA § 16-13-21 (12.1) (A). Nor can it reasonably be inferred that the noncontrolled niacinamide powder was "a product . . . which . . . by dosage unit appearance,

including color, shape, size, or markings, would lead a reasonable person to believe" it would have a "similar" or "same" effect as methamphetamine. The powder was not shown to be a "dosage unit." It had no particular "shape, size, or markings." It simply was the cutting agent for methamphetamine which, together with the representations made by defendant, led the buyer to believe it *was* methamphetamine. It is clear that the description contained in OCGA § 16-13-21 (12.1) (B) means pills and capsules and other products which mimic controlled substances.

If the majority's construction is accepted, then OCGA § 16-13-30.2 would always, or nearly always, be a lesser included offense in violation of OCGA § 16-13-30.1. In effect this would leave up to the jury whether to convict of a felony or of a misdemeanor of a high and aggravated nature, under the same set of facts. I do not interpret the legislature's intent to be this, but rather to be to treat less severely activities involving imitations of the real thing. The substance here was not an imitation of methamphetamine but rather the cutting agent without the methamphetamine ingredient.

I would agree with the trial court and affirm the conviction.

I am authorized to state that Presiding Judge Carley and Judge Johnson join in this opinion.

DECIDED JUNE 3, 1992 —
RECONSIDERATION DENIED JULY 2, 1992 — 

*Murphy, Murphy & Garner, Stephen E. Garner,* for appellant.
*William A. Foster III, District Attorney, Jeffrey L. Ballew, Assistant District Attorney,* for appellee.