S92G1284. THE STATE v. BURGESS.
(429 SE2d 252)

SEARS-COLLINS, Justice.

Ronald Burgess, the appellee, sold a substance which he represented to be methamphetamine to an informant for $700.[1] The substance turned out to be primarily niacinamide, a vitamin which is regarded as a "dangerous drug" in Georgia, OCGA § 16-13-71 (b) (640.3), and which is commonly used as a cutting agent for methamphetamine. The appellee was indicted and convicted for violating OCGA § 16-13-30.1[2] ("Section 30.1"), which provides that under cer-

---

[1] The crime was committed on February 23, 1991, and the appellee was indicted on June 17, 1991. The appellee was convicted and sentenced following a jury trial which began on August 12, 1991. The court reporter certified the transcript on September 4, 1991, and the trial court denied the appellee's motion for new trial on October 9, 1991. The Court of Appeals entered its decision on June 3, 1992, and denied the appellee's motion for reconsideration on July 2, 1992. We granted the appellee's application for a writ of certiorari on October 6, 1992, and heard the parties' oral arguments on January 12, 1993.

[2] OCGA § 16-13-30.1 provides, in part, as follows:

tain circumstances the distribution of "noncontrolled substances" is a felony.

In a whole court decision, the Court of Appeals reversed the appellee's conviction, *Burgess v. State*, 204 Ga. App. 766 (420 SE2d 590) (1992), holding that the trial court erred in failing to grant the appellee's written request to charge the jury with OCGA § 16-13-30.2[3] ("Section 30.2"), which provides that distribution of "imitation controlled substances" is a misdemeanor.[4] We granted certiorari to consider whether the trial court correctly declined to charge the jury with Section 30.2. We find that a charge on Section 30.2 was not required, and we reverse the Court of Appeals.

1. The Court of Appeals held that Section 30.2 is a lesser included offense of Section 30.1 "since it is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of [Section 30.1]." *Burgess*, 204 Ga. App. at 767-768. This language, which is found in OCGA § 16-1-6 (1), has been inconsistently applied by this court.

In *State v. Estevez*, 232 Ga. 316 (206 SE2d 475) (1974), this court applied what has come to be known as the "actual evidence test" for determining if a lesser crime is included in the crime charged under OCGA § 16-1-6 (1). Under the actual evidence test, a lesser crime is included in the crime charged if the evidence actually presented at

(a) (1) It is unlawful for any person knowingly to manufacture, deliver, distribute, dispense, possess with the intent to distribute, or sell a noncontrolled substance upon either:

(A) The express or implied representation that the substance is a narcotic or nonnarcotic controlled substance;

(B) The express or implied representation that the substance is of such nature or appearance that the recipient of said delivery will be able to distribute said substance as a controlled substance; or

(C) The express or implied representation that the substance has essentially the same pharmacological action or effect as a controlled substance.

[3] OCGA § 16-13-30.2 provides, in part, as follows:

(a) Any person who knowingly manufactures, distributes, or possesses with intent to distribute an imitation controlled substance as defined in paragraph (12.1) of Code Section 16-13-21 is guilty of a misdemeanor of a high and aggravated nature. OCGA § 16-13-21 (12.1) defines an "imitation controlled substance" as follows:

(A) A product specifically designed or manufactured to resemble the physical appearance of a controlled substance, such that a reasonable person of ordinary knowledge would not be able to distinguish the imitation from the controlled substance by outward appearances; or

(B) A product, not a controlled substance, which, by representations made and by dosage unit appearance, including color, shape, size, or markings, would lead a reasonable person to believe that, if ingested, the product would have a stimulant or depressant effect similar to or the same as that of one or more of the controlled substances [identified elsewhere in the Code].

[4] It is not apparent why the legislature would decree that a violation of Section 30.2 is a misdemeanor and a violation of Section 30.1 is a felony when, based on the language of the statutes, Section 30.2 seems to govern the more serious offense.

trial to establish the elements of the crime charged also establishes all the elements of the lesser crime. Though the actual evidence test is still viable under Georgia law, see *Montes v. State*, 262 Ga. 473 (421 SE2d 710) (1992); *Haynes v. State*, 249 Ga. 119 (288 SE2d 185) (1982), many courts have encountered obstacles in applying that test and have resorted, either explicitly or in actuality, to the simpler, more practical "required evidence test."[5] See, e.g., *Potts v. State*, 241 Ga. 67 (243 SE2d 510) (1978); *Potts v. State*, 261 Ga. 716 (410 SE2d 89) (1991); *High v. State*, 247 Ga. 289, 294 (276 SE2d 5) (1981) (overruled on other grounds); *Dennis v. State*, 158 Ga. App. 142 (279 SE2d 275) (1981). Under the required evidence test, a lesser crime is included in the crime charged if all of the elements which are *required by law* to establish the lesser crime also must be established in order to prove the greater crime.

2. We find that Section 30.2 cannot be considered a lesser included crime of Section 30.1 under the required evidence test or, in this case,[6] under the actual evidence test. While the precise scope of Section 30.2 may not be entirely clear,[7] it is clear that the plain language of Section 30.2 requires proof of a fact not required for a conviction under Section 30.1.

A "noncontrolled substance," the distribution of which is restricted by Section 30.1, is defined simply as "any drug or substance other than a controlled substance." OCGA § 16-13-21 (29). On the other hand, for a substance to be deemed an "imitation controlled substance," the distribution of which is restricted by Section 30.2, it must be shown that the substance was "specifically designed or manufactured to resemble the physical appearance of a controlled substance," or that "representations made *and . . .* dosage unit appearance, including color, shape, size, or markings, would lead a reasonable person to believe" it was a controlled substance. (Emphasis supplied.) OCGA § 16-13-21 (12.1). Evidence regarding the purpose of the design and manufacture of the product or the specific "dosage unit appearance, including color, shape, size, or markings" of the product is not necessary when the alleged infraction involves a "noncontrolled substance" under Section 30.1. Thus, the required evidence test for determining if one offense is included within another is

---

[5] This is the test applied by a majority of jurisdictions, and which has been adopted by the United States Supreme Court (*Blockburger v. United States*, 284 U. S. 299 (52 SC 180, 76 LE 306) (1932)). See also P. Kurtz, Criminal Offenses and Defenses in Georgia, pp. 391-395 (R. Cleary 3rd ed. 1991).

[6] It is conceivable that the evidence actually presented on a charge of violating Section 30.1 would also satisfy the requirements of Section 30.2, but that is not so in this case.

[7] The question of the statute's validity in light of any possible lack of clarity was neither raised nor addressed by the parties and was not ruled on by the lower courts. Therefore, we do not address the issue.

not satisfied.

Furthermore, the evidence actually presented at trial would not support a conviction under Section 30.2. The evidence presented was that the substance sold to the undercover agent was a brown powder wrapped in a small package. Regardless of any representations which may have been made by the appellee, there was no evidence that the substance had any special "dosage unit appearance . . ., color, shape, size, or markings" which would make it appear to be anything other than that which it was: the vitamin, niacinamide.[8] Additionally, there was no evidence which would support a finding that the niacinamide was manufactured specifically to resemble methamphetamine.

*Judgment reversed. All the Justices concur, except Hunstein, J., who concurs in the judgment only. Carley, J., disqualified.*

DECIDED MAY 3, 1993 —
RECONSIDERATION DENIED MAY 28, 1993.

*W. A. Foster III, District Attorney, Jeffrey L. Ballew, Assistant District Attorney,* for appellant.

*Murphy, Murphy, & Garner, Stephen E. Garner, Julie Williams Cain,* for appellee.

---

[8] On the other hand, a violation of Section 30.1 may be based on the representations of the defendant alone, even though the substance has no special color, shape, size, or markings.