A06A0773. MANDERS v. THE STATE.
(634 SE2d 773)

BARNES, Judge.

John Richard Manders and his co-defendant, Jerado Salinas, were indicted for possession of cocaine with the intent to distribute. The men were tried together, and although Salinas was present on day one for the call of the trial calendar, he did not appear for trial the following day. Manders was found guilty and sentenced to twenty years to serve seven in confinement, and Salinas, his co-defendant, was tried in absentia, found guilty of the lesser included offense of possession of cocaine, and sentenced to ten years to serve five. In his motion for new trial, Manders raised the issue of the trial court's decision on the order of the final argument, and argued that the jury charge on entrapment was confusing and contradictory. After a hearing on the motion for new trial, the trial court denied the motion. However, in its order the trial court noted that Salinas had been

granted a new trial with the consent of the State because it was error to try him in absentia. It is from the denial of his motion for new trial that Manders appeals.

On appeal, the defendant no longer enjoys a presumption of innocence, and we view the evidence in the light most favorable to the verdict. We do not weigh the evidence or determine the credibility of witnesses, and we uphold the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Townsend v. State*, 256 Ga. App. 837, 838 (570 SE2d 47) (2002).

So viewed, the evidence demonstrates that an investigator with the Piedmont Northern Multi-Agency Narcotics Squad (MANS) worked with an informant to arrange a delivery of marijuana and cocaine to Oglethorpe County. The informant had voluntarily given the investigator Manders' name, and the investigator had no past knowledge of Manders. The investigator testified that before his arrest, Manders was not the subject of a MANS investigation and was not a target. After a series of telephone calls, several of which were taped, the informant arranged for a meeting to buy the drugs from Manders. The officer talked with Manders and was told that Manders would be driving a Chevrolet S-10. The informant and the investigator met Manders, who arrived in a Ford truck, held up a bag containing a white substance, and asked for his money. The substance was later tested and identified as 26.23 grams of cocaine.

1. Manders first contends that the trial court erred by denying him the right to the final concluding argument to the jury. He maintains that because the trial court has since granted Salinas a new trial after determining that it was error to try him in absentia, Manders was, in effect, denied his right to the concluding argument. Manders argues that by being denied the right to the *final* concluding argument, he was deprived of his right to capture the final moments of the jury's attention, and that Salinas' final argument was "essentially for the State against [him]."

The following discussion took place respecting the order of the arguments:

> The Court: [Manders' attorney] has indicated he is going to take both opening and concluding.
> [Salinas' attorney]: I'll just take concluding.
> The Court: Just concluding, alright.
> [Manders' attorney]: If we're doing it that way, your honor, could I be the final concluding argument? Is there a problem with that?
> [Salinas' attorney]: We'd just ask to do it in the same order in which we've conducted the trial.
> The Court: I guess I'll just have to make a decision.

[Manders' attorney]: That's why we asked you.

The Court: Well, I've done everything so far — your guy was listed first, so I'll give him the last one.

[Manders' attorney]: But, your honor, at least we had the decency to show up for the trial.

The Court: I understand, but maybe he needs a little advantage because his guy isn't here. You'll get the middle argument.

At the time of Manders' trial, OCGA § 17-8-71 provided that,

[a]fter the evidence is closed on both sides, the prosecuting attorney shall open and conclude the argument to the jury. If the defendant introduces no evidence, his counsel shall open and conclude the argument to the jury after the evidence on the part of the state is closed.

Moreover, this court has held that it can be reversible error for the trial court to improperly deny the defendant the right to open and close under OCGA § 17-8-71, *Jones v. State*, 260 Ga. App. 487, 488 (2) (580 SE2d 278) (2003), unless the evidence is so overwhelming as to demand a verdict of guilty. *Starks v. State*, 260 Ga. App. 719, 720 (1) (580 SE2d 672) (2003).

However, the Code section, as newly amended, and effective July 1, 2005, now provides that:

After the evidence is closed on both sides, the prosecuting attorney shall open and conclude the argument to the jury. The defendant shall be entitled to make a closing argument prior to the concluding argument of the prosecuting attorney.

OCGA § 17-8-71.

Although Manders argues that the trial court erred by denying him the right to make the final argument, the trial court did, in fact, properly allow the defendants, who put forth no evidence, the final concluding argument. The trial court then exercised its discretion and determined the order the co-defendants would present their concluding arguments — Manders first, then Salinas. Accordingly, there is no merit to Manders' contention that the trial court denied him the right to conclude the argument to the jury.

The issue before this court is whether Salinas' position as the final concluding argument somehow deprived Manders of a fair trial given the subsequent determination that it was error to conduct Salinas' trial in absentia. Ironically, given the revision of OCGA § 17-8-71, which now holds that the prosecutor always concludes the

argument to the jury, any advantage of closing argument would not be available to Manders should there be a retrial.

Before the recent revision, "[t]he Georgia statute [OCGA § 17-8-71] [was] the law of this State since 1852. [Cit.] The purpose in allowing an accused with no defense to have the opening and concluding argument is to allow his counsel every opportunity to persuade the jury that the State has failed to prove his guilt." *Yeomans v. State*, 229 Ga. 488, 492 (4) (192 SE2d 362) (1972). This right, however, does not include an absolute right to have the more advantageous argument position.

In *Robinson v. State*, 164 Ga. App. 652, 656 (4) (297 SE2d 751) (1982), this court found no error in the denial of appellant's motion to sever on the grounds that he had lost his right to open and close in the closing arguments because a co-defendant admitted evidence. We held that "[t]he assertion does no more than suggest [that appellant] might have had a better chance of an acquittal or a hung jury had he been in the more advantageous argument position. It does not clearly show prejudice amounting to a denial of due process." Id.

Likewise, in *Chapman v. State*, 263 Ga. 393, 394 (2) (435 SE2d 202) (1993), Chapman complained that the use by his co-defendant's attorney of Chapman's post-*Miranda* silence constituted sufficient harm to warrant a severance of his trial from his co-defendant. Our Supreme Court held, "[t]he existence of purported antagonistic defenses between two co-indictees is not sufficient to warrant the grant of a separate trial, absent a showing of harm. [Cit.]" Id.

Here, Manders complains that he was harmed by being deprived of the final concluding argument because "the final argument the jury heard was . . . a veritable torrent of blame that sought repeatedly to incriminate [Manders]." He argues Salinas was able to "pursue what proved to be a fruitful strategy of heaping blame, in the name of his absent client, on [Manders]."

As noted earlier, the mere presence of antagonistic defenses does not create a presumption of harm for a co-defendant. Manders enjoyed the same advantages as his co-defendant, Salinas, if not more. Salinas' exclusion from the trial afforded Manders the same opportunity to cast blame on Salinas as the guilty party whose absence might be construed as inculpatory fleeing.

2. Manders also contends that the trial court erred by giving the jury confusing, contradictory, and ambiguous charges on the law of entrapment. He contends that the trial court erred by combining the statutory language on entrapment with the language regarding entrapment from *Finley v. State,* 214 Ga. App. 452 (448 SE2d 78) (1994).

The trial court gave the following charge:

A person is not guilty of a crime if by entrapment that person's conduct is induced or solicited by a government officer, or employee or agent of either for the purpose of obtaining evidence to be used in prosecuting the person for [the] commission of the crime. Entrapment exists when the idea and intention of the commission of the crime originated with [the] government officer or employee or with an agent of either and that officer or employee by undue persuasion, incitement or deceitful means induced the accused to commit the act for which the accused would not have committed except for the conduct of such officer or employee. To constitute entrapment, the accused must have been induced to commit the criminal act that he would not have otherwise committed except by undue persuasion, incitement or deceitful means practiced upon [an] accused by a government officer, employee or agent of either. . . . I further charge you that repeated requests by an officer or agent for contraband goods does not constitute undue persuasion. . . . Entrapment is seduction or improper inducement to commit a crime and is not merely testing by trap, trickiness or deceit of one who is suspected.

The trial court included the last two sentences from the entrapment charges requested by the State.

Manders complains that this language from *Finley* is legally inconsistent and at odds with OCGA § 16-3-25[1] in that the charge appears to approve of the State's use of deceit, and also that the statement that "repeated requests by an officer or agent for contraband goods [do] not constitute undue persuasion," seems to indicate that there is an exception to the law of entrapment for drug cases.

The language in *Finley* is generally accepted as an accurate statement of the law of entrapment. In *McDonald v. State,* 156 Ga. App. 143, 147 (4) (273 SE2d 881) (1980), we held "[t]he phrase 'undue

---

[1] A person is not guilty of a crime if, by entrapment, his conduct is induced or solicited by a government officer or employee, or agent of either, for the purpose of obtaining evidence to be used in prosecuting the person for commission of the crime. Entrapment exists where the idea and intention of the commission of the crime originated with a government officer or employee, or with an agent of either, and he, by undue persuasion, incitement, or deceitful means, induced the accused to commit the act which the accused would not have committed except for the conduct of such officer.
Three distinct elements embody the entrapment defense under OCGA § 16-3-25: (1) the idea for the commission of the crime must originate with the state agent; (2) the crime must be induced by the agent's undue persuasion, incitement, or deceit; and (3) the defendant must not be predisposed to commit the crime.

persuasion' as used in [OCGA § 16-3-25] means something more than repeated requests on the part of an officer or agent for contraband goods. [Cits.]" Likewise, in *Thomas v. State*, 134 Ga. App. 18, 22 (2) (213 SE2d 129) (1975), we held " '[e]ntrapment is the seduction or improper inducement to commit a crime and not the testing by trap, trickiness, or deceit of one suspected.' [Cit.] The discovery of crime and the procurement of evidence by deception are not prohibited. A trap may be set. [Cits.]" (Punctuation omitted.)

As we found in *Finley*, here, the additional charges presented by the State and given by the trial court were correct legal statements, and the charge on entrapment as a whole fully and accurately informed the jury of the elements of the entrapment defense. At the motion for new trial hearing, Manders presented testimony from a linguistics expert who testified that the charge had intellectual inconsistencies and contradictions. However, "[i]t is not necessary, in considering a charge, to strain its reasonable intendment by problematical adverse constructions, but if it is *sufficiently clear* to be understood by jurors of *ordinary capacity and understanding*, this is all that is required." (Citations and punctuation omitted; emphasis supplied.) *Rucker v. State*, 135 Ga. App. 468, 472 (4) (218 SE2d 146) (1975), overruled on other grounds, *Keaton v. State*, 253 Ga. 70, 72 (316 SE2d 452) (1984).

*Judgment affirmed. Andrews, P. J., and Bernes, J., concur.*

DECIDED JUNE 16, 2006 —
RECONSIDERATION DENIED JULY 27, 2006 — ▇▇▇▇▇▇

*Timmons, Warnes & Anderson, John W. Timmons, Jr.,* for appellant.

*Robert W. Lavender, District Attorney, James W. Webb, Assistant District Attorney,* for appellee.

