## A08A1430. CHANDLER v. THE STATE.
(668 SE2d 510)

SMITH, Presiding Judge.

A jury found Michael Chandler guilty of selling a counterfeit substance.[1] Following the denial of his motion for new trial, Chandler appeals, asserting several claims of error. Having found these claims to be without merit, we affirm.

Construed in favor of the verdict, the evidence reveals that a drug task force agent received a call from a confidential informant ("CI") stating that he knew someone who "could get a quantity of cocaine and was willing to sell that cocaine." The agent spoke with someone by phone who told him that the cocaine would cost $800 per ounce. This person was later identified as Hassan Bell. The agent requested an ounce and a half of cocaine totaling $1,200 and agreed to meet at a local restaurant. When the agent arrived, he observed

---

[1] Chandler was acquitted of theft by deception.

several individuals, including Chandler, standing outside and approached them. Chandler told the agent that they "had to go somewhere to do the deal." The agent and Chandler entered the agent's vehicle, and Chandler told the agent that he wanted to count the money. The agent then requested the cocaine. After Chandler counted the money, he stated to Bell, who was standing outside the vehicle, that "the money was all there." Bell then handed the agent a bag that contained a white powdery substance.[2] The agent then called in other officers and arrested Chandler.

Chandler testified that he and the CI had both resided at a halfway house and that he had allowed the CI to reside there in his space for one week. He testified further that the CI owed him $68 for the week's stay. Chandler explained that the CI asked him for a ride to meet his brother-in-law in Riverdale. The CI told Chandler that he had to "pick up some money." Chandler called a friend to give the two a ride. Chandler testified that the CI told him that he had to make a "stop" first. The men stopped at an apartment building, and the CI went inside. Chandler stated that when the CI returned 20 minutes later, he was carrying a brown paper bag and told Chandler that he had to give his brother-in-law the bag to get some money.

The men eventually arrived at the restaurant, where Chandler believed they were waiting on the CI's brother-in-law. When the agent arrived and gave them money, Chandler counted it at Bell's request. When Bell told the agent "there's a little powder in there," Chandler realized that he had been involved in a drug deal. Chandler claimed that he did not know what was in the bag that Bell handed to the agent and was only waiting for the CI to pay him $68.

1. Chandler first argues that the evidence was insufficient to support his conviction because the State failed to rebut the evidence of entrapment. He contends he presented unrebutted evidence that he was unaware of his involvement in an illegal transaction, that the CI asked him for a ride and did not disclose the true purpose of the trip, that he was not present when the CI obtained the drugs, and that he only wanted to get $68 from the CI.

"In Georgia, the entrapment defense consists of three distinct elements: (1) the idea for the commission of the crime must originate with the state agent; (2) the crime must be induced by the agent's undue persuasion, incitement, or deceit; and (3) the defendant must not be predisposed to commit the crime." (Citations and punctuation omitted.) *Bacon v. State*, 188 Ga. App. 782 (1) (374 SE2d 351) (1988). Although Chandler's testimony may have raised the defense of

---

[2] The parties stipulated that the state crime lab determined that the substance was not a controlled substance.

entrapment, it did not demand a finding of such. See id. at 782-783 (1). There was evidence presented here that although the agent had contact with Bell over the phone, he was approached by Chandler who told him that they "had to go somewhere to do the deal." Chandler got into the passenger side of the agent's vehicle and counted a large sum of money. While Chandler counted the money, the agent asked for the cocaine. When Chandler was satisfied with the amount of money provided by the agent, he told Bell that the money was "all there," and Bell handed the agent a bag containing the counterfeit substance.

"The issue of which version of . . . events to believe was for the jury, which resolved the credibility issues in favor of the State." (Citation omitted.) *Bennett v. State*, 228 Ga. App. 254 (1) (491 SE2d 481) (1997). This court does not weigh the evidence or determine witness credibility, but only determines if the evidence was sufficient. Id. Under these circumstances, "the evidence authorized a rational trier of fact to find beyond a reasonable doubt that the appellant had not been entrapped." (Citation and punctuation omitted.) *Bacon*, supra, 188 Ga. App. at 783 (1); see also *Finley v. State*, 214 Ga. App. 452, 453-454 (1) (448 SE2d 78) (1994) (evidence of entrapment was rebutted by other evidence although confidential informant did not testify). Although Chandler contends that the CI induced him to participate and concealed the true nature of the transaction, the jury was authorized to find, based particularly on Chandler's conduct during the transaction, that he was a willing participant predisposed to commit the crime. The evidence was therefore sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), to sustain Chandler's conviction. See OCGA § 16-13-30 (i).

2. Chandler argues that the court erred in failing to give his entire requested charge on entrapment. He contends that the court erroneously omitted the following paragraph:

> Where the criminal design originates with the officials of the government, or one acting for and in their behalf, and they implant in the mind of a person the disposition to commit the alleged offense and induce its commission in order that they may prosecute that person, such constitutes entrapment, and the accused should be acquitted.

Chandler argues that in light of the evidence he presented that the scheme originated with the CI, the omission of this language was error because the jury was not informed that entrapment results where the design originates with a government agent.

Here, the trial court instructed the jury:

YALE LAW LIBRARY

Now, this defendant says that he was entrapped into this case and in that connection I charge you that a person is not guilty of a crime if . . . by entrapment that person's conduct is induced or solicited by a government officer or employee or agent of either for the purpose of obtaining evidence to be used in prosecuting the person for the commission of the crime.

Entrapment exists when the idea and intention of the commission of the crime originated with the government officer or employee or with an agent of either and that the officer or employee by undue persuasion, incitement, or deceitful means induced the accused to commit the act, which the accused would not have committed except for the conduct of such officer or employee.

To constitute entrapment the accused must have been induced to commit the criminal act that he would not have otherwise committed except for undue persuasion, incitement, or deceitful means practiced upon the accused by the government officer or employee or agent of either.

In this case, the court's instruction to the jury is nearly identical to the instruction given in *Manders v. State*, 280 Ga. App. 742, 746 (2) (634 SE2d 773) (2006), where we held that the instruction as a whole was accurate. Id. at 746-747 (2). Moreover, contrary to Chandler's argument, the instruction given by the court is similar to the instruction he requested, and it adequately informed the jury that "[e]ntrapment exists when the idea and intention of the commission of the crime originated with the government officer" or his agent. Because the charge on entrapment given here fully and accurately informed the jury of the elements of the entrapment defense, we see no error. See id.; see also *Leverette v. State*, 188 Ga. App. 866, 868 (3) (374 SE2d 803) (1988).

3. Finally, Chandler argues that under the rule of lenity, he should have been sentenced for a misdemeanor rather than a felony. "The rule of lenity entitles the accused to the lesser of two penalties where the *same* conduct would support either a felony or misdemeanor conviction." (Citation omitted; emphasis in original.) *Selfe v. State*, 290 Ga. App. 857, 862 (3) (660 SE2d 727) (2008).

Chandler was charged with violating OCGA § 16-13-30 (i), a felony offense. That Code section provides that "it is unlawful for any person to possess, have under his control, manufacture, deliver, distribute, dispense, administer, purchase, sell, or possess with intent to distribute a counterfeit substance." Id. The definition of

"counterfeit substance" applicable here is "[a] controlled substance or noncontrolled substance, which is held out to be a controlled substance or marijuana, whether in a container or not which does not bear a label which accurately or truthfully identifies the substance contained therein." OCGA § 16-13-21 (6) (B).

Chandler contends that his conduct was also a violation of OCGA § 16-13-30.2, which is a misdemeanor. That Code section provides that "[a]ny person who knowingly manufactures, distributes, or possesses with intent to distribute an imitation controlled substance as defined in paragraph (12.1) of Code Section 16-13-21 is guilty of a misdemeanor of a high and aggravated nature." OCGA § 16-13-30.2 (a). An "imitation controlled substance" is defined as "[a] product specifically designed or manufactured to resemble the physical appearance of a controlled substance, such that a reasonable person of ordinary knowledge would not be able to distinguish the imitation from the controlled substance by outward appearances," or

> [a] product, not a controlled substance, which, by representations made and by dosage unit appearance, including color, shape, size, or markings, would lead a reasonable person to believe that, if ingested, the product would have a stimulant or depressant effect similar to or the same as that of one or more of the controlled substances.

OCGA § 16-13-21 (12.1) (A) and (B).

The parties stipulated only that the substance recovered was not a controlled substance, and there was no evidence presented that it was "specifically designed or manufactured to resemble the physical appearance of a controlled substance." The substance therefore does not fall within the first definition of "imitation controlled substance." See OCGA § 16-13-21 (12.1) (A). There was also no evidence presented that the substance falls under the second definition of "imitation controlled substance." See OCGA § 16-13-21 (12.1) (B). Although the agent testified that he observed a "white, powdery substance" inside the bag that he believed was cocaine, there was no evidence that the substance had any special "dosage unit appearance" based on color, shape, size, or markings. Compare *Brown v. State*, 276 Ga. 606, 608 (1) (581 SE2d 35) (2003) (defendant represented that she was handing over a crack cocaine rock which appeared to be a certain dosage unit based on its color, shape, size, and overall appearance). We recognize that the term "dosage unit" has been used to describe a certain quantity of crack cocaine. See id. at 608 (1), n. 9. But we find no basis to extend the term to a substance described merely as a white powder. See *State v. Burgess*,

263 Ga. 143, 146 (429 SE2d 252) (1993) (no evidence that brown powder wrapped in small package had any special dosage unit appearance). Because the evidence here reveals that the substance would not fall under either definition of "imitation controlled substance," Chandler's conduct does not fall within the scope of OCGA § 16-13-30.2 (a). The rule of lenity does not apply, and the trial court properly sentenced him for a felony. Compare *Brown*, supra, 276 Ga. at 608-609 (2) (because defendant's conduct constituted violation of both the felony provision of OCGA § 16-13-30.1 and the misdemeanor provision of OCGA § 16-13-30.2, rule of lenity required that he be sentenced for a misdemeanor).

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED OCTOBER 10, 2008.

*Lloyd W. Walker*, for appellant.

*Scott L. Ballard, District Attorney, Gail M. Travillian, Assistant District Attorney*, for appellee.