A08A2199, A08A2200. DIAZ v. THE STATE (two cases).
(676 SE2d 252)

ADAMS, Judge.

Following a bench trial, the trial court found co-defendants Juan Eduardo Diaz and Victor Luis Diaz each guilty of two felony counts of possession with intent to distribute a noncontrolled substance, OCGA § 16-13-30.1.[1] In Case No. A08A2199, Juan Diaz appeals claiming that the rule of lenity required that he be punished for the misdemeanor offense of distributing an imitation controlled substance, OCGA § 16-13-30.2, rather than for the felony counts of which he was convicted. Victor Diaz appeals in Case No. A08A2200. He contends that the evidence was insufficient to authorize his convictions. He also claims that the trial court erred in failing to apply the rule of lenity. For the reasons set forth below, we affirm in both cases.

Construed in favor of the verdict, the evidence shows that a confidential informant placed Juan Diaz in contact, via cell phone, with Georgia Bureau of Investigation ("GBI") agent Kenneth Howard. Juan Diaz, who purported to act on behalf of a third party, agreed to sell Howard two ounces of cocaine and four ounces of methamphetamine for approximately $6,000. On May 31, 2007, Juan Diaz called Howard to inform him that the transaction would occur at a QuikTrip service station in Cherokee County.

Howard and a second agent drove to the QuikTrip. Meanwhile, other officers set up surveillance. Howard went in the store to meet with Juan Diaz, as he had been instructed, but Juan Diaz was not there. Through his cell phone, Juan Diaz told Howard that he was close by, watching him, but that he did not want to meet until the people with the drugs got there. Howard responded that he would not wait at that location and that Juan Diaz should call back when his friends arrived.

A half an hour later, Juan Diaz called Howard and proposed that he take Howard's money to the dealer and return with the drugs, but Howard refused. During the negotiations, Juan Diaz relayed Howard's responses to a third party. Juan Diaz finally agreed to meet Howard at a nearby Waffle House restaurant. Other GBI officers in

---

[1] Juan Diaz was also found guilty of obstruction of an officer, OCGA § 16-10-24 (a).

the area observed Juan Diaz get into the back seat of a Ford Taurus carrying three other persons, which then parked in front of the Waffle House.

Juan Diaz was standing alone in the parking lot when Howard arrived. He showed Juan Diaz a roll of money and asked to see the drugs. Juan Diaz handed his cell phone to Howard and the person on the other line, later identified as Kedrick Lacey, indicated that he was standing across the parking lot. Kedrick Lacey told the agent, "I'm putting it right here," and placed the suspected narcotics next to a brick column. Howard and Juan Diaz began walking toward Kedrick Lacey, who picked up the suspected drugs when they got close, put them in his pocket, and began walking away.

Howard gave the arrest signal and took Kedrick Lacey into custody. Juan Diaz fled on foot and was apprehended by other law enforcement officers. A search of Kedrick Lacey's person revealed that he was carrying a loaded .380 semi-automatic handgun in his back pocket and a black bag which contained multiple clear plastic baggies containing an off-white powdery substance. According to Howard, this was "[c]ommon packaging for narcotics." The GBI crime lab later tested the substances, which were "negative for common drugs of abuse."

While Howard was apprehending Kedrick Lacey, other officers approached the Ford Taurus. Derek Lacey got out of the car and walked and then ran away from the officers. While an officer pursued Derek Lacey, another officer returned to the vehicle. Victor Diaz, who was seated in the back, exited upon the officer's command and was taken into custody.[2]

Following his arrest, officers interviewed Juan Diaz. According to Juan Diaz, the supposed drugs "were from the Laceys and [Victor] Diaz." More specifically, Juan Diaz was asked to set up the deal by a gentleman he worked with in exchange for a discounted purchase price on a car, and Juan Diaz called Kedrick Lacey to secure the drugs.

Kedrick Lacey testified at Juan Diaz's and Victor Diaz's trial. According to Kedrick Lacey, Juan Diaz called him "trying to get some drugs for some guy that he worked with." Kedrick Lacey then called Victor Diaz to see if Victor Diaz knew someone who could get the drugs. Derek Lacey subsequently picked up Kedrick Lacey and Victor Diaz, and they drove to meet Juan Diaz.[3] Kedrick Lacey, Victor Diaz, and Juan Diaz knew they were going to a drug deal. When they got

---

[2] There is no apparent familial relationship between Juan Diaz and Victor Diaz. Kedrick Lacey and Derek Lacey are cousins.

[3] All four occupants were indicted for possession with intent to distribute for purposes of OCGA § 16-13-30.1.

to the scene, Victor Diaz passed a bag to Kedrick Lacey after Juan Diaz had gotten out of the car. Kedrick Lacey then got out and "threw the bag in the bushes." Kedrick Lacey indicated that the bag was already on the back seat when Juan Diaz got out of the car, and he was unsure whether Juan Diaz or Victor Diaz had placed the bag on the seat.

## Case No. A08A2199

1. Juan Diaz contends that the trial court erred in convicting him on the felony charges of possession with intent to distribute a noncontrolled substance for purposes of OCGA § 16-13-30.1. He argues that the trial court should have applied the rule of lenity and punished him for the corresponding misdemeanor offense of "[u]nlawful manufacture, distribution, or possession with intent to distribute of imitation controlled substances." OCGA § 16-13-30.2. "The rule of lenity entitles the accused to the lesser of two penalties where the *same* conduct would support either a felony or misdemeanor conviction. . . . [T]he essential requirement of the rule of lenity is that both crimes could be proved with the same evidence." (Citations omitted; emphasis in original.) *Selfe v. State*, 290 Ga. App. 857, 862 (3) (660 SE2d 727) (2008).

It is a felony "for any person knowingly to manufacture, deliver, distribute, dispense, possess with the intent to distribute, or sell a noncontrolled substance" upon, among other things, "[t]he express or implied representation that the substance is a narcotic or non-narcotic controlled substance." OCGA § 16-13-30.1 (a) (1) (A), (e).

On the other hand, OCGA § 16-13-30.2 provides that "[a]ny person who knowingly manufactures, distributes, or possesses with intent to distribute an imitation controlled substance" is guilty of a misdemeanor. For purposes of this offense, an "imitation controlled substance" is "[a] product specifically designed or manufactured to resemble the physical appearance of a controlled substance, such that a reasonable person of ordinary knowledge would not be able to distinguish the imitation from the controlled substance by outward appearances." OCGA § 16-13-21 (12.1) (A). Alternatively, an "imitation controlled substance" is defined as "[a] product, not a controlled substance, which, by representations made *and* by dosage unit appearance, including color, shape, size, or markings, would lead a reasonable person to believe that, if ingested, the product would have a stimulant or depressant effect. . . ." (Emphasis supplied.) OCGA § 16-13-21 (12.1) (B).

The evidence does not show that Juan Diaz possessed with the intent to distribute an "imitation controlled substance" for purposes

YALE LAW LIBRARY

of the misdemeanor offense.[4] Notwithstanding that the noncontrolled substance was in common packaging for narcotics, the evidence did not establish that the substance appeared as a "dosage unit" based on color, shape, size, or markings. See *State v. Burgess*, 263 Ga. 143, 146 (429 SE2d 252) (1993) (brown powder wrapped in small package did not appear to be a dosage unit); *Chandler v. State*, 294 Ga. App. 27, 31 (3) (668 SE2d 510) (2008) (bag of white, powdery substance that appeared to be cocaine was not a dosage unit). Compare *Brown v. State*, 276 Ga. 606, 608 (1) (b) (581 SE2d 35) (2003) (substance appeared to be ten dollar dosage unit of crack cocaine, based on the substance's color, shape, size, texture, and overall appearance). Pretermitting whether in this case "a reasonable person of ordinary knowledge would not be able to distinguish the imitation from the controlled substance by outward appearances," as Juan Diaz argues, the evidence fails to establish that the substance in this case was "specifically designed or manufactured" to resemble a controlled substance. OCGA § 16-13-21 (12.1) (A). Juan Diaz's reliance on *Dorsey v. State*, 212 Ga. App. 479 (1) (441 SE2d 891) (1994) is misplaced. *Dorsey* recites evidence, absent here, of such specific design or manufacture. See id. (defendant admitted selling "FLEX," described as "cooked-up Goody powders with ORA-JEL on it. Goody powders cook up just like cocaine"). Since the evidence fails to establish that Juan Diaz possessed with intent to distribute an "imitation controlled substance," his conduct does not fall within OCGA § 16-13-30.2 (a). It follows that the rule of lenity does not apply and the trial court did not err in penalizing Juan Diaz for the felony counts. See *Chandler*, 294 Ga. App. at 31 (3) (rule of lenity did not require defendant be punished for the misdemeanor offense of distributing an imitation controlled substance, OCGA § 16-13-30.2, rather than the felony offense of selling a counterfeit substance, OCGA § 16-13-30 (i)). Compare *Brown*, 276 Ga. at 608-609 (2) (defendant's conduct violated both OCGA §§ 16-13-30.1 and 16-13-30.2, so rule of lenity required that he be sentenced for the misdemeanor offense).

### Case No. A08A2200

2. Victor Diaz contends that the evidence was insufficient to support his convictions under OCGA § 16-13-30.1 for possessing with intent to distribute a substance represented to be cocaine and

---

[4] Our Supreme Court has previously noted: "It is not apparent why the legislature would decree that a violation of Section 30.2 is a misdemeanor and a violation of Section 30.1 is a felony when, based on the language of the statutes, Section 30.2 seems to govern the more serious offense." *State v. Burgess*, 263 Ga. 143, 144, n. 4 (429 SE2d 252) (1993).

possessing with intent to distribute a substance represented to be methamphetamine. We disagree.

Victor Diaz argues that he was merely a back seat passenger who was not shown to be in either actual or constructive possession of the substance at issue. See *Kier v. State*, 292 Ga. App. 208, 209-211 (1) (663 SE2d 832) (2008). However, evidence established that Juan Diaz negotiated to sell agent Howard a substance expressly represented to be cocaine and a substance expressly represented to be methamphetamine. This material was in the car with Victor Diaz, who handed it to Kedrick Lacey. That Victor Diaz acted innocently is refuted by Kedrick Lacey's testimony that he, Juan Diaz, and Victor Diaz "knew what was going on." Kedrick Lacey also testified that he called Victor Diaz to ask about drugs in connection with this transaction. Any rational trier of fact could conclude beyond a reasonable doubt that Victor Diaz was a party to the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); OCGA § 16-2-21 ("[a]ny party to a crime who did not directly commit the crime may be indicted, tried, convicted, and punished for commission of the crime upon proof that the crime was committed and that he was a party thereto"); *Waters v. State*, 280 Ga. App. 566, 567 (634 SE2d 508) (2006) (defendant, who knew he was transporting a co-defendant carrying methamphetamine, was party to the crime of possession of the contraband); *Sherrer v. State*, 289 Ga. App. 156, 159-160 (2) (656 SE2d 258) (2008) (though not in actual possession of the contraband, defendant was shown to be actively involved in a criminal enterprise to possess methamphetamine).

3. Victor Diaz also claims that in light of the rule of lenity the trial court erred in penalizing him for the felony, OCGA § 16-13-30.1, rather than the misdemeanor, OCGA § 16-13-30.2. For the reasons set forth in Division 1, we disagree.

*Judgments affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED MARCH 12, 2009.

*Jonathan A. Kesler*, for appellant (case no. A08A2199).
*Richard A. Jones*, for appellant (case no. A08A2200).
*Garry T. Moss, District Attorney, Lawton W. Scott, Sara A. Thompson, Assistant District Attorneys*, for appellee.